**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**David Joe MASSEY,
Defendant-Appellant.**

No. 80–2321.

United States Court of Appeals,
Tenth Circuit.

Aug. 27, 1982.

James T. Branam of Dennis & Branam, Antlers, Okl., for defendant-appellant.

G. Steven Stidham, Asst. U. S. Atty., Muskogee, Okl. (James E. Edmondson, U. S. Atty., and Mark F. Green, Asst. U. S. Atty.,

Muskogee, Okl., with him on the brief), for plaintiff-appellee.

Before DOYLE, PECK,* and SEYMOUR, Circuit Judges.

SEYMOUR, Circuit Judge.

David Joe Massey was convicted after a jury trial of possession of marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1), and conspiracy to possess marijuana with intent to distribute in violation of 21 U.S.C. § 846. On appeal Massey cites as grounds for reversal: (1) impermissible comment by the Government on Massey's post-arrest silence; (2) insufficiency of the evidence; (3) the lower court's decision upholding the validity of two search warrants; and (4) several evidentiary rulings. For the reasons set forth below, we remand for further proceedings.

I.

BACKGROUND

Massey, two other men, and three women made a roundtrip from Oklahoma to Missouri in mid-July, 1980. The purpose of the trip was to pick marijuana from an area in Missouri where some members of the group knew it was growing wild. One of the women, Mary Ann Harris, acted as an informant for state law enforcement agencies. She alerted them that the trip was to take place and maintained contact with the agents who followed the group to Missouri and kept it under surveillance.

The group traveled in two cars, one of which was driven by Massey. After two nights of picking, the group had accumulated six large burlap sacks of marijuana. The sacks were loaded into the car that Massey was · not driving, and the group headed back toward Oklahoma, still under surveillance. The automobiles were stopped at a road block in Muskogee County, Oklahoma, and five of the group were

arrested. Warrants to search the two automobiles were obtained, and the marijuana was discovered and seized.

II.

POST–ARREST SILENCE

Massey took the stand and testified that he had previously been a deputy sheriff for the county and that he was acting in an undercover capacity for the county undersheriff when he made the trip to Missouri. He stated that discussions concerning his undercover operation took place before the trip in the presence of third persons, and he presented testimony from two of those persons supporting his exculpatory story. Massey argues that reversible error occurred when the Government subsequently elicited evidence of Massey's post-arrest silence and commented upon it in an effort to impeach his defense.

The Government prosecutor cross-examined Massey at length about his post-arrest failure to tell the authorities that he had been working in an undercover capacity. The relevant portions of the cross-examination are as follows:

"Q. [Prosecutor] Okay. Have you talked to Jerry Harris [Oklahoma Narcotics Bureau agent] between the time you were arrested and the time we started trial? Have you seen Mr. Harris?

A. [Massey] I have seen Mr. Harris.

. . . .

Q. Well, okay. Have you talked to him?

A. I have seen Mr. Harris, I can't recall whether I have talked to him or not.

Q. Have you seen me?

A. Yes, sir.

Q. Between the time you were arrested and today or yesterday?

A. Yes, sir.

Q. How many times?

A. Two or three, sir.

Q. Okay. You saw me at your initial appearance, didn't you?

* Honorable John W. Peck of the Sixth Circuit    sitting by designation.

A. Yes, sir.

Q. You saw the marshals, members of the marshal's office, too, didn't you?

A. Yes, sir.

Q. Did you see a United States Magistrate?

A. Yes, sir.

Q. Okay. Then we had a bond hearing, didn't we?

A. Yes.

Q. You saw me again. Saw the Magistrate that day, didn't you?

A. Yes, sir.

Q. Did you see Jerry Harris that day?

A. I believe so.

Q. That wasn't very long after the arrest, was it, about a week afterwards?

A. Approximately, I believe.

Q. Okay. Now, then, that was back in the latter part of July, wasn't it?

A. I guess it would have been.

. . . .

Q. Did you see me or any members of my office at that time?

A. Yes, sir, you were at the arraignment, I believe.

Q. Did you see a judge?

A. I can't recall who all was at the arraignment.

Q. Well, there was somebody sitting up there at the front desk, wasn't there?

A. There sure was.

Q. Conducting the arraignment?

A. Yes, sir.

Q. Did you have an attorney with you at that time?

A. Yes, sir.

Q. Okay, that would have been back in September, wouldn't it?

A. I believe it was.

Q. And we started trial here in October, right—I mean November, November 3rd?

A. Yes, sir.

Q. *So, you have had from July, the latter part of July to November 3rd to come forth with the story that you were actually acting in our behalf, is that correct?*

. . . .

Q. *Did you bring it up that you were a member of the sheriff's office in Antlers and that you were working in an undercover capacity when you were arrested,* before you talked to an attorney . . .?

A. I had talked to one more attorney which I did not like and I turned the attorney down. I told him—

Q. No, no, no, I'm asking if between the time you knew the trip was happening and the time you were arrested and *immediately after you were arrested, before you ever talked to an attorney, did you tell anybody you were acting in an undercover capacity?*

. . . .

Q. Calling your attention to the time between the time the trip was started and *the time that you were arrested and immediately thereafter, before you talked to an attorney, did you ever tell anyone, any law enforcement officer. that you were acting in an undercover capacity?*

A. From the time I was arrested—repeat the question, Mr. Green, please.

Q. Okay. *Did you tell any law enforcement officers when you were arrested that you were acting in an undercover capacity?*

A. I'm trying to remember if I mentioned it to Mr. Larsh or not. I cannot remember, sir.

Q. You just don't know whether you did or not, is that correct?

A. That's correct."

Rec., Vol. III, at 259–70 (emphasis added).

Furthermore, in his closing argument the prosecutor encouraged the jury to conclude that Massey's exculpatory story was untrue because he had not volunteered it after his arrest. The relevant portion of the Government's closing argument is as follows:

"Why didn't he tell any law enforcement officers when he was arrested that he

was acting in an undercover capacity? I'll guarantee you if that man, Jerry Harris, who does act undercover periodically, ever gets arrested by some police officers for dealing in drugs or possession of drugs after he has just made a buy undercover, I'll guarantee you he won't wait until he is tried before a jury to tell anyone that he was acting in an undercover capacity. He'll tell the police officer when he is arrested, and if they still put him in jail he'll tell the attorney, he'll tell everybody because he is not going to want to come up here and get tried. And I submit to you that man would have done the same thing if that was the case."

Rec., Vol. III, at 342–43.

■ The use of a defendant's post-arrest silence to impeach an exculpatory story told for the first time at trial violates the Fourteenth Amendment's mandate of due process if the silence follows the giving of Miranda warnings.[1] See Fletcher v. Weir, ––– U.S. –––, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982); Doyle v. Ohio, 426 U.S. 610, 619, 96 S.Ct. 2240, 2245, 49 L.Ed.2d 91 (1976). Impeachment on the basis of a defendant's silence following warnings is "fundamentally unfair because Miranda warnings inform a person of his right to remain silent and assure him, at least implicitly, that his silence will not be used against him . . . . Doyle bars the use against a criminal defendant of silence maintained after receipt of governmental assurances." Anderson v. Charles, 447 U.S. 404, 407–08, 100 S.Ct. 2180, 2181–82, 65 L.Ed.2d 222 (1980). Unfortunately, the record does not reveal at what point in time, if ever, Massey was given such warnings. While the appeal in this case was pending, the Supreme Court made clear that due process is not violated by cross-examination on post-arrest silence where a Miranda warning was not given. See Fletcher, ––– U.S. at ––––––––, 102 S.Ct. at 1311–12.

In sum, the receipt of Miranda warnings is determinative of the constitutional issue. Accordingly, we remand this case to the trial court for an evidentiary hearing to establish whether Massey was informed of his constitutional right to remain silent.

■■ If Massey was properly given his Miranda warnings at the time of his arrest or prior to custodial interrogation, cross-examination and comment by the Government on his silence after the warnings clearly violates the principle set forth in Doyle. Because it is of constitutional dimension, such an error requires a new trial unless we are convinced that the error is harmless beyond a reasonable doubt after assessing the record as a whole. See Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967); see also Williams v. Zadradnick, 632 F.2d 353 (4th Cir. 1980); Deats v. Rodriguez, 477 F.2d 1023 (10th Cir. 1973); United States v. Arnold, 425 F.2d 204 (10th Cir. 1970). Some factors relevant to determining whether the comment is harmless include:

"1. The use to which the prosecution puts the postarrest silence.

"2. Who elected to pursue the line of questioning.

"3. The quantum of other evidence indicative of guilt.

"4. The intensity and frequency of the reference.

"5. The availability to the trial judge of an opportunity to grant a motion for mistrial or to give curative instructions."

Williams, 632 F.2d at 361–62 (footnotes omitted).

Although ample evidence showed that Massey had participated in the Missouri trip, this evidence was not inconsistent as a whole with Massey's exculpatory story, had the jury chosen to believe him. By using Massey's post-arrest silence to refute his defense, the Government attacked the heart

---

1. "[I]f a person in custody is to be subjected to interrogation, he must first be informed in clear and unequivocal terms that he has the right to remain silent." Miranda v. Arizona, 384 U.S. 436, 467–68, 86 S.Ct. 1602, 1624, 16 L.Ed.2d 694 (1966).

of his case. Massey was questioned not only about his silence at the time of his arrest, but about his silence at subsequent interrogations, at his initial appearance, at the marshal's office, at the magistrate's office, at the bond hearing, and at the arraignment. On the record in this case, the error cannot be considered harmless. *See, e.g., Williams,* 632 F.2d at 356–57, 362 n.15; *United States v. Meneses-Davila,* 580 F.2d 888, 893-95 (5th Cir. 1978); *Deats v. Rodriguez,* 477 F.2d 1023, 1024–25 (10th Cir. 1973); *United States v. Nolan,* 416 F.2d 588, 592-94 (10th Cir.), *cert. denied,* 396 U.S. 912, 90 S.Ct. 227, 24 L.Ed.2d 187 (1969). If Massey's silence followed *Miranda* warnings, a new trial is mandated.[2]

## III.

### SUFFICIENCY OF THE EVIDENCE

Because of the possibility that Massey may be entitled to a new trial as a result of the evidentiary hearing on remand, we must review his allegation that the evidence of constructive possession of the marijuana is insufficient as a matter of law. If this allegation has merit, the Double Jeopardy Clause precludes a second trial. *Burks v. United States,* 437 U.S. 1, 18, 98 S.Ct. 2141, 2150, 57 L.Ed.2d 1 (1978).

■ In evaluating this claim, we must view the evidence, both direct and circumstantial, in the light most favorable to the Government. *United States v. Blitstein,* 626 F.2d 774, 776 (10th Cir. 1980), *cert. denied,* 449 U.S. 1102, 101 S.Ct. 898, 66 L.Ed.2d 828 (1981). "[A]ll reasonable inferences and credibility choices [must be] made in support of the jury's verdict." *Meneses-Davila,* 580 F.2d at 896.

■ Constructive possession is possession in law but not in fact. A person in constructive possession of an item knowingly holds the power and ability to exercise dominion and control over it. *United States v. Zink,* 612 F.2d 511, 516 (10th Cir. 1980); *Amaya v. U. S.,* 373 F.2d 197, 199 (10th Cir. 1967). "In essence, constructive possession is the ability to reduce an object to actual possession." *United States v. Martinez,* 588 F.2d 495, 498 (5th Cir. 1979) (footnote omitted). Constructive possession may be joint among several individuals and may be established by circumstantial evidence. *Id.; United States v. Riggins,* 563 F.2d 1264, 1266 (5th Cir. 1977), *cert. denied,* 439 U.S. 848, 99 S.Ct. 148, 58 L.Ed.2d 150 (1978).

■ In this case evidence was introduced showing that the trip was a cooperative venture, that Massey helped pick and load the marijuana, and that he was to receive a one fourth share. Even though he was not driving the car in which the marijuana was found, the two vehicles were traveling together and maintained communication by CB radio. The evidence was sufficient to permit the inference that a working relationship existed among the group members by which Massey had "some appreciable ability to guide the destiny of the drug." *United States v. Staten,* 581 F.2d 878, 883 (D.C.Cir.1978) (footnote omitted); *accord United States v. Gomez,* 529 F.2d 412, 419 (5th Cir. 1976). Therefore, the evidence of constructive possession was legally sufficient to send the issue to the jury.

## IV.

### THE SEARCH WARRANTS

Warrants were obtained to search the two cars after they were stopped at the road block. Massey asserts that these war-

---

**2.** Because *Miranda* warnings may have been given in this case, we decline to determine whether, in the absence of such warnings, evidence of defendant's prior silence is of so little probative worth that its value is outweighed by its prejudicial effect. *See United States v. Impson,* 531 F.2d 274, 277 (5th Cir. 1976), *cert.* denied, 434 U.S. 1050, 98 S.Ct. 900, 54 L.Ed.2d 803 (1978). Under our supervisory power over the judicial process, we could require a new trial free from prejudicial error if we made such a determination. *See United States v. Hale,* 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975).

rants should have been quashed and the resulting evidence suppressed on two grounds: (1) the warrants were not supported by sufficient probable cause; (2) the warrants were not obtained, issued, or served in compliance with Fed.R.Crim.P. 41.

## A.  Probable Cause

■ Massey contends that the warrants were issued without the requisite showing of probable cause.  When the affidavit contains hearsay information provided by an informant, the affidavit must provide the issuing authority with: (1) sufficient underlying circumstances to demonstrate the validity of the informant's conclusion that evidence could be discovered at the location to be searched; and (2) sufficient underlying circumstances to support the affiant's belief that the informant was reliable or his information credible.  *Spinelli v. United States*, 393 U.S. 410, 412–13, 89 S.Ct. 584, 586–87, 21 L.Ed.2d 637 (1969); *Aguilar v. Texas*, 378 U.S. 108, 114, 84 S.Ct. 1509, 1514, 12 L.Ed.2d 723 (1964).  "[An] affidavit should be considered in a commonsense, nontechnical manner, with deference given in marginal cases to the prior determination of probable cause by the issuing authority." *United States v. Rios*, 611 F.2d 1335, 1347 (10th Cir. 1979); *accord United States v. Ventresca*, 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965).

■ In this case the affiant for both warrants was an agent of the Oklahoma Narcotics Bureau, Jerry Harris.  Harris' affidavit [3] stated that the informant had provided information leading to at least one felony arrest in the past.  It also detailed the informant's direct personal contact with the participants during the trip to Missouri, and stated facts showing that the information provided by the informant had been corroborated by independent investigation and surveillance.  The affidavits are sufficient to support a finding of probable cause, particularly in view of the corroboration provided by independent means.  *See United States v. Sporleder*, 635 F.2d 809, 812 (10th Cir. 1980); *United States v. Willis*, 633 F.2d 930, 932 (10th Cir. 1980), *cert. denied*, 449 U.S. 1129, 101 S.Ct. 950, 67 L.Ed.2d 117 (1981).

## B.  Compliance with Rule 41

■ The warrants were issued by a state associate district judge on federal warrant forms.  The affidavits supporting the warrants alleged that the property sought constituted evidence of violations of federal law.  The warrants were initiated by an assistant United States attorney (see *infra*) and executed by a federal agent.  Federal officials were present during the search.  Given this significant federal involvement, we conclude that the warrants are federal in nature and must comply with Fed.R.Crim.P. 41 as well as constitutional requirements.  *See United States v. Pennington*, 635 F.2d 1387, 1389 (10th Cir. 1980), *cert. denied*, 451 U.S. 938, 101 S.Ct. 2018, 68 L.Ed.2d 325 (1981); *Rios*, 611 F.2d at 1347 & n.22.

Massey contends that the warrants were not requested by a federal officer as required by Rule 41(a),[4] that the return required by the warrants was improper under Rule 41(c)(1),[5] and that oral testimony taken from the affiant by the issuing judge

---

3.  The affidavits supporting both warrants were identical.

4.  Fed.R.Crim.P. 41(a) provides:

"A search warrant authorized by this rule may be issued by a federal magistrate or a judge of a state court of record within the district wherein the property or person sought is located, upon request of a federal law enforcement officer or an attorney for the government."

5.  Fed.R.Crim.P. 41(c)(1) provides:

"(1) Warrant upon Affidavit.  A warrant other than a warrant upon oral testimony under paragraph (2) of this subdivision shall issue only on an affidavit or affidavits sworn to before the federal magistrate or state judge and establishing the grounds for issuing the warrant.  If the federal magistrate or state judge is satisfied that grounds for the application exist or that there is probable cause to believe that they exist, he shall issue a warrant identifying the property or person

was not recorded as required by Rule 41(c)(1).

■■■ In reviewing the denial of a motion to suppress, we must consider the evidence presented at the suppression hearing in the light most favorable to the Government. *Rios*, 611 F.2d at 1344. The evidence presented below establishes that although the warrants were issued upon the affidavit of an agent of the Oklahoma Narcotics Bureau, they were requested by an assistant United States Attorney who telephoned the state judge in advance and accompanied the state agent when the affidavit was presented to the judge. This method of obtaining a search warrant satisfies the requirement of Rule 41(a) that the warrant be issued "upon request of . . . an attorney for the government." *See United States v. Carra*, 604 F.2d 1271, 1273 (10th Cir.), *cert. denied*, 444 U.S. 994, 100 S.Ct. 529, 62 L.Ed.2d 425 (1979).

■■■ The record reflects that the warrant was returned to a United States District Judge, notwithstanding that the warrant itself directed its return to the state judge who issued it. Although Rule 41(c) specifies that the warrant "shall designate a federal magistrate to whom it shall be returned," we have in the past refused to reverse for violation of this requirement when the actual return was properly made. *See id.* at 1273–74. A hypertechnical approach to search warrants is not appropriate. *See Ventresca*, 380 U.S. at 108–09, 85 S.Ct. at 745–46; *Rios*, 611 F.2d at 1347.

■■■ Finally, Massey argues that the state judge took oral testimony to supplement the affidavit submitted to support the warrants and failed to record the testimony as required by Rule 41(c). At the hearing

on the motion to suppress the evidence obtained from the search, the state judge testified that he did in fact require oral testimony from the affiant but that it was substantially the same as the statements made in the affidavit. When the affidavit itself is sufficient to satisfy probable cause, as we have held here, the fact that oral testimony was also received but not recorded does not require suppression of the evidence obtained. *See United States v. Sturgeon*, 501 F.2d 1270, 1274 (8th Cir.), *cert. denied*, 419 U.S. 1071, 95 S.Ct. 659, 42 L.Ed.2d 667 (1974).

We have carefully reviewed Massey's remaining allegations of error and conclude that they are without merit and do not require further discussion.

The case is reversed and remanded for further proceedings consistent with this opinion.

■■■■■■

to be seized and naming or describing the person or place to be searched. The finding of probable cause may be based upon hearsay evidence in whole or in part. Before ruling on a request for a warrant the federal magistrate or state judge may require the affiant to appear personally and may examine under oath the affiant and any witnesses he may produce, provided that such proceeding shall be taken down by a court reporter or recording equipment and made part of the affidavit. The warrant shall be directed to a civil officer of the United States authorized

to enforce or assist in enforcing any law thereof or to a person so authorized by the President of the United States. It shall command the officer to search, within a specified period of time not to exceed 10 days, the person or place named for the property or person specified. The warrant shall be served in the daytime, unless the issuing authority, by appropriate provision in the warrant, and for reasonable cause shown, authorizes its execution at times other than daytime. It shall designate a federal magistrate to whom it shall be returned."