UNITED STATES of America,
Plaintiff-Appellee,

v.

Andrew PINO, a/k/a Andrew Apodaca,
Defendant-Appellant.

No. 86–2660.

United States Court of Appeals,
Tenth Circuit.

Sept. 3, 1987.

Alonzo Padilla (Kirk Garcia, on the brief), Albuquerque, N.M., for defendant-appellant.

Richard Smith (William L. Lutz, U.S. Atty., and Mark D. Jarmie, Asst. U.S. Atty., on the brief), Albuquerque, N.M., for plaintiff-appellee.

Before LOGAN, BARRETT and SEYMOUR, Circuit Judges.

LOGAN, Circuit Judge.

A federal jury convicted defendant Andrew Pino, an American Indian, on one count of assault with a dangerous weapon with intent to do bodily harm, in violation of 18 U.S.C. § 1153 and 18 U.S.C. § 113(c), and one count of assault resulting in serious bodily injury, in violation of 18 U.S.C. § 1153 and 18 U.S.C. § 113(f). The victim, Alton Tsalabutie, was also an Indian. The assault occurred near Laguna, New Mexico, in Indian country.

On appeal, defendant contends that the district court erred in (1) denying defendant's motion for a psychiatric examination of the victim, a government witness; (2) refusing to allow defense counsel to cross-examine the victim concerning his alcohol usage; (3) refusing to grant a mistrial on the grounds that the prosecutor improperly questioned defendant and commented to the jury on defendant's exercise of his Fifth Amendment right to silence; and (4) entering a conviction for assault with intent to murder, when the jury actually found defendant guilty of a lesser included offense.

Testimony revealed that defendant, Tsalabutie, and Cornelius Antonio, another Indian, stopped at a bar on their way to a tribal feast in Seama, New Mexico. Tsalabutie bought a case of beer, and the three young men went down into an arroyo to drink it. After much beer had been consumed, a fight broke out in which Tsalabutie was severely injured.

Both Tsalabutie and Antonio testified that defendant had been the primary aggressor and had twice thrown a large rock on Tsalabutie's face while Tsalabutie was lying on the ground. Antonio admitted having hit and kicked Tsalabutie after being threatened by defendant. Defendant admitted having kicked Tsalabutie twice in the face, but claimed that Antonio had started the fight and had been the only one to throw a rock on Tsalabutie. The government's medical expert testified that the injuries to Tsalabutie's face could not have been caused by his being hit with a fist or kicked, but could have been caused by a large rock similar to the blood-stained rock that was Government's Exhibit 1.

I

At the pretrial motion hearing, defense counsel explained that he sought a psychiatric evaluation of Tsalabutie not for the purpose of challenging his competence as a witness, but in order to assist in his cross-examination. Defendant's mother testified at the hearing that she had heard people in the community say that Tsalabutie was sometimes "not all there," II R. 6, although she had no personal knowledge that Tsalabutie acted abnormally. An affidavit filed in support of defendant's motion for psychiatric examination states that Tsalabutie was a heavy drinker and had been hospitalized in the past for mental illness. The motion was denied. The district court questioned Tsalabutie only briefly before permitting him to testify, but defense counsel was allowed to cross-examine Tsalabutie concerning his drinking, his eyesight and his memory.

The district court has broad discretion in deciding whether to allow psychiatric examination of a government witness for purposes of impeachment. *United States v. Provenzano*, 688 F.2d 194, 203 (3d Cir.), *cert. denied*, 459 U.S. 1071, 103 S.Ct. 492, 74 L.Ed.2d 634 (1982); *United States v. Raineri*, 670 F.2d 702, 709 (7th Cir.), *cert. denied*, 459 U.S. 1035, 103 S.Ct. 446, 74 L.Ed.2d 601 (1982). A psychiatric opinion is generally not admissible as impeachment evidence, *United States v. Jackson*, 576 F.2d 46, 49 (5th Cir.1978); *Provenzano*, 688 F.2d at 203–04, but may be used by the defense to identify possible avenues of cross-examination. *United States v. Roach*, 590 F.2d 181, 186 n. 9 (5th Cir. 1979). Before permitting a psychiatric examination, the court must consider "the infringement on a witness's privacy, the opportunity for harassment, and the possibility that an examination will hamper law enforcement by deterring witnesses from coming forward." *Raineri*, 670 F.2d at 709.

In this case, the rather vague factual basis for defendant's motion, defense

counsel's unfettered opportunity to cross-examine the witness, and our review of Tsalabutie's testimony convince us that the district court did not abuse its discretion in denying defendant's motion for psychiatric examination.

## II

█ Defendant argues that the district court improperly restricted cross-examination of Tsalabutie concerning his alcohol use. The alleged error occurred as follows:

"Q. [by Mr. Garcia] Mr. Tsalabutie, you seem to have some trouble remembering these things, don't you?

A. Yes, sir.

Q. Mr. Tsalabutie, you have a lot of memory trouble, in fact, don't you?

A. Yes, sir.

Q. Mr. Tsalabutie, isn't it a fact that you have that problem because you were drinking?

A. No, sir.

Q. You drink a lot, though, don't you?

A. Yes, sir.

Q. In fact, you've been arrested twice for drinking since—

MR. JARMIE: Objection; that's improper impeachment.

THE COURT: Objection will be sustained.

MR. GARCIA: Yes, sir."

III R. 42.

The district court properly sustained the objection. "Arrest without more does not, in law any more than in reason, impeach the integrity or impair the credibility of a witness. It happens to the innocent as well as the guilty. Only a conviction, therefore, may be inquired about to undermine the trustworthiness of a witness." *Michelson v. United States*, 335 U.S. 469, 482, 69 S.Ct. 213, 222, 93 L.Ed. 168 (1948); *see also Schwab v. United States*, 327 F.2d 11, 16 (8th Cir.1964); 3 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 608[06] at 608–40 to 608–41 (1985).

## III

Defendant's contention that the court erred in refusing to order a mistrial presents a closer question. On cross-examination, the prosecuting attorney questioned defendant concerning his failure to tell his exculpatory story to the arresting officer, Mark Martinez:

"Q. [Mr. Jarmie] Now, you were thinking as you were walking away from the spot where Alton was hit in the chest by a rock with Cornie, from Cornie, 'If they catch me, all I have to do is tell my story,' is that right?

A. [Defendant] Yes.

Q. But you didn't tell your story, did you?

A. Yes, I did.

Q. Well, you never told it to Mark Martinez, did you?

A. 'Cause I didn't believe him. If I did, he would've turned the whole story around and told the FBI that I was the one that did it, which I didn't.

Q. But you never told them that story."

IV R. 33–34. The district court intervened at this point, warning the prosecutor to "stay away from that line of questioning." *Id.* at 34. Defense counsel objected to the questioning, somewhat belatedly, but did not move for mistrial. The court then instructed the jury as follows: "Ladies and gentlemen, disregard that last couple of questions about whatever the officer's name is, Mark something; disregard that about what the Defendant may or may not have told to him. Just eliminate that. It has nothing to do with the lawsuit." *Id.* at 35.[1]

█ Without more, the prosecutor's questions seem clearly directed at defendant's post-arrest silence. Use for impeachment purposes at trial of a defendant's silence at the time of arrest and after receiving *Miranda* warnings violates due process. *Doyle v. Ohio*, 426 U.S. 610, 619, 96 S.Ct. 2240, 2245, 49 L.Ed.2d 91 (1976); *United States v. Massey*, 687 F.2d 1348,

---

1. Defendant also construes a portion of the prosecutor's closing argument as an improper comment on defendant's post-arrest silence.

This court, however, is unable to discern any such comment in the passage defendant quotes. *See* IV R. 56–57.

1353 (10th Cir.1982). Because it was neither briefed nor argued, we do not decide whether the sequence of events outlined above constituted a "use for impeachment purposes" of defendant's post-arrest silence, or was merely an attempt at such a use. *See Greer v. Miller,* — U.S. —, — & n. 5, 107 S.Ct. 3102, 3108 & n. 5, 97 L.Ed.2d 618 (1987). Nor do we consider the government's argument that *Fletcher v. Weir,* 455 U.S. 603, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982), should apply. While that case holds that cross-examination concerning the defendant's post-arrest silence is *constitutionally* permissible when no *Miranda* warning was given, *id.* at 607, 102 S.Ct. at 1312, the questioning may constitute reversible error on other grounds. *See* Fed.R.Evid. 403; *Massey,* 687 F.2d at 1354 n. 2; *see also United States v. Hale,* 422 U.S. 171, 180–81, 95 S.Ct. 2133, 2138–39, 45 L.Ed.2d 99 (1975). *Massey* indicates that a remand for an evidentiary hearing may be required if, as here, there is no evidence in the record whether Officer Martinez gave a *Miranda* warning. *Id.* at 1353.

■ Rather, we agree with the government that if error occurred it was "invited," *see United States v. Doran,* 564 F.2d 1176, 1177 (5th Cir.1977), and harmless. *See United States v. Harrold,* 796 F.2d 1275, 1280 (10th Cir.1986), *cert. denied,* — U.S. —, 107 S.Ct. 892, 93 L.Ed.2d 844 (1987). Defense counsel initiated the inquiry as to defendant's silence when first confronted by the police. On direct examination, defendant's attorney elicited the following testimony:

"Q. [by Mr. Garcia] Now, why didn't you tell the police the truth when they picked you up?

A. [Defendant] Because if I did, he might turn the story around and tell the FBI that I was the one that did it, which I didn't.

Q. Well, why didn't you tell the FBI the truth?

A. The reason why I didn't tell him, 'cause he might turn the story around the way he lied about my fingerprints."

IV R. 23. After brief questioning on the fingerprints, defense counsel pursued the issue further:

"Q. When is the first time anyone asked you, by the way, about what you had done or what had happened?

A. When was the first time anybody asked me?

Q. Yeah. Did Officer Aragon ask you what had happened?

A. No.

Q. Did any of the other officers ask you?

A. No, sir.

Q. Who was the first one who asked you what happened?

A. The FBI."

*Id.* at 23–24.

We believe the prosecutor's cross-examination went no further than the questions defense counsel had already asked of defendant. Perhaps if the prosecutor had been allowed by the court to pursue his questioning further, it would have amounted to impermissible comment, because defendant did not offer an exculpatory story to police at his arrest. *Cf. Doyle,* 426 U.S. at 619 n. 11, 96 S.Ct. at 2245 n. 11 (recognizing that prosecutor may use post-arrest silence to rebut claim that defendant gave exculpatory story to police upon arrest).

Further, the evidence of defendant's guilt was very strong, if not overwhelming. Tsalabutie and Antonio, the victim and an eyewitness, gave largely consistent descriptions of defendant's assault on Tsalabutie, and defendant's own statements implicated him in the crime. Another witness, Chris Torivio, testified that defendant bragged to Torivio at the tribal feast that he and Antonio had killed Tsalabutie with a rock. Officer Martinez testified that while he was transporting defendant and Antonio to the Laguna Police Department, he overheard defendant ask: "How come they picked you up, Cornie? You didn't do nothing." III R. 92.

Finally, the district court gave a prompt curative instruction, after which the government refrained from mentioning defendant's silence. Taking all of these factors into consideration, we are convinced

that the prosecutor's error, if any, in questioning defendant's post-arrest silence was harmless beyond a reasonable doubt.

## IV

Both parties agree that the district court committed a clerical error in its Judgment and Commitment order, which indicates that defendant was convicted of assault with intent to murder, rather than the lesser included offense of assault with a dangerous weapon with intent to do bodily harm. The parties further agree that the district court can correct this error on remand pursuant to Fed.R.Crim.P. 36. We therefore REMAND this case to the district court for that purpose. In all other respects, the judgment and sentence are AFFIRMED.