UNITED STATES of America,
Plaintiff–Appellee,

v.

Walter A. CULPEPPER, Jr.,
Defendant–Appellant.

Nos. 86–2867, 87–2529.

United States Court of Appeals,
Tenth Circuit.

Dec. 7, 1987.

Robert S. Streepy, Asst. U.S. Atty., Kansas City, Kan. (Benjamin L. Burgess, Jr., U.S. Atty., Kansas City, Kan., was also on the brief), for plaintiff-appellee.

Vicki Mandell–King, Asst. Federal Public Defender, Denver, Colo. (Michael G. Katz, Federal Public Defender, Denver, Colo., was also on brief), for defendant-appellant.

Before HOLLOWAY, Chief Judge, ANDERSON, Circuit Judge, and ALLEY [*], District Judge.

ALLEY, District Judge.

Walter A. Culpepper, Jr. was convicted after a jury trial of two counts of possession with the intent to distribute more than fifty kilograms of marijuana, in violation of 21 U.S.C. § 841(a). The government's theory of the case was "constructive possession." On appeal, Culpepper argues that his convictions should be reversed because: (1) the evidence was insufficient to support the verdict; (2) the trial court committed plain error in allowing testimony concerning his uncharged bad acts; and (3) the trial court abused its discretion in refusing to allow the jury to view one of the fields in which the marijuana was located. For the reasons set forth below, we affirm.

### Factual Background

On August 6, 1986, Frank Michael Gassman, an undercover agent assigned to the Federal Drug Enforcement State and Local Task Force, was introduced to appellant Culpepper by a confidential informant at a motel in Denver, Colorado. Culpepper told Gassman that he had hidden several garbage bags of marijuana near a highway

fifty miles east of Denver. Upon Culpepper's request, Gassman accompanied Culpepper to this location, where the latter retrieved the marijuana.

Gassman then explained to Culpepper that he was acting as a middleman for a person who wanted to purchase a large amount of marijuana. Culpepper responded that he might be interested in selling two fields of marijuana, located in Kansas. He told Gassman that the marijuana in each of these fields was ready to be harvested and that, because he had another field that he needed to harvest himself, it would be more convenient if Gassman would purchase both of the Kansas fields and harvest them on his own.

On the following day, August 7, 1986, Gassman returned to the motel and met with Culpepper again. He paid him $800 for the marijuana that the two of them had retrieved from a hiding place on the preceding day. Culpepper told Gassman that he would sell each of the fields that he had mentioned for $5,000 and that each field would produce between five and ten tons of marijuana. After Gassman agreed to purchase them for this price, the two decided that they would drive to the fields on the following day.

On August 8, 1986, Gassman returned to the motel accompanied by undercover agent Robert Vette, also assigned to the Federal Drug Enforcement State and Local Task Force. Gassman told Culpepper that Vette was his brother and would help harvest the marijuana. Culpepper, Gassman, and Vette then left for Kansas. During the drive, Culpepper told Gassman and Vette that he and three or four others had planted marijuana seeds in the two fields about ten years ago. He also advised Gassman and Vette of the different ways that marijuana could be harvested.

In Goodland, Kansas, the three men stopped at a store from which Culpepper said he wished to obtain some gloves and snippers for use in the harvest. Culpepper

[*] Honorable Wayne E. Alley, United States District Judge for the Western District of Oklahoma, sitting by designation.

told the two agents that, as he did not have the money to pay for these two items, he would shoplift them. However, Culpepper could find neither gloves or snippers in the store and took nothing from it. Before leaving the premises, Culpepper pointed out some infrared lamps to Gassman and told him that those were the kind needed to dry harvested marijuana.

Late on the evening of August 8, 1986, Culpepper, Gassman, and Vette checked into a motel in Junction City, Kansas. Although Culpepper told Gassman and Vette that he wanted to show them the fields that night because he did not want to be seen, Gassman convinced him to wait until the next morning. At the motel bar that night, Culpepper told Vette that he had harvested marijuana from the fields on many occasions.

The following morning, Culpepper directed Gassman and Vette to the first of the fields, located on the Fort Riley Military Reservation in a clearing surrounded by trees. The three men reached the field by driving to the end of a dirt road and walking down a path through heavy underbrush for about a quarter of a mile.

Both Gassman and Vette testified that the first field contained healthy marijuana plants, with mature stalks, numerous buds, and a high concentration of T.H.C. Both testified that there were marijuana plants as far as they could see and that there were well more than a hundred plants there. From the quality of the marijuana plants he observed in the field, Gassman believed that Culpepper was telling the truth about planting marijuana seeds there. After walking around part of the field, Culpepper, Gassman, and Vette returned to the car. As they were leaving, Culpepper pointed out a large ditch and told the agents that he usually hid marijuana in it after his harvests.

Culpepper, Gassman, and Vette then drove to Kansas City, Kansas to view the second field, located in an isolated area between a gravel road and a railroad track. Both agents testified that the marijuana plants in the field were spread out along a strip approximately three-fourths of a mile

long and fifty to sixty feet wide and that there were well over a hundred marijuana plants there also. According to Gassman, the plants in this second field appeared to be of good quality. Before the three men left the second field, Culpepper pointed out a part of it where he had stored garbage bags, gloves, and snippers for harvesting the marijuana. He also stated that the marijuana that he had sold to Gassman in Denver came from this field.

Upon leaving the second field, Culpepper told the agents that he wanted to be paid for the two fields. The three men then drove to a parking lot in Kansas City, Missouri, where Culpepper was arrested.

### Sufficiency of the Evidence

Culpepper first argues that the evidence presented was insufficient to prove that he constructively possessed the two fields of marijuana. In evaluating this assertion, the Court must view all the evidence, both direct and circumstantial, in the light most favorable to the government. *United States v. Hooks*, 780 F.2d 1526, 1529 (10th Cir.); *cert. denied* 475 U.S. 1128, 106 S.Ct. 1657, 90 L.Ed.2d 199 (1986); *United States v. Massey*, 687 F.2d 1348, 1357 (10th Cir. 1982). Evidence is considered sufficient to support a criminal conviction if, when viewed in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *reh'g denied* 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979).

In order for an individual constructively to possess property, he must knowingly hold the power and ability to exercise dominion and control over it. *Massey*, 687 F.2d at 1354, *United States v. Zink*, 612 F.2d 511, 516 (10th Cir.1980); *Amaya v. United States*, 373 F.2d 197, 199 (10th Cir. 1967). With regard to narcotics, we have defined constructive possession as "an appreciable ability to guide the destiny of the drug." *Massey*, 687 F.2d at 1354, quoting *United States v. Staten*, 581 F.2d 878, 883 (D.C.Cir.1978).

■ Constructive possession may be established by circumstantial evidence. *Massey*, 687 F.2d at 1354. However, the government must establish that there was a sufficient nexus between the accused and the drug. *United States v. Cardenas*, 748 F.2d 1015, 1019–1020 (5th Cir.1984); *United States v. Rackley*, 742 F.2d 1266, 1272 (11th Cir.1984). Incriminating statements made by the accused concerning his relationship to the drug may be considered in making this determination. *United States v. Garcia*, 655 F.2d 59, 63 (5th Cir.1981). In addition, constructive possession may be joint among several individuals. *Massey*, 687 F.2d at 1354; *United States v. Martinez*, 588 F.2d 495, 498 (5th Cir.1979).

■ Culpepper maintains that a number of facts, taken as a whole, negate his constructive possession of the two marijuana fields. He points to the condition of the two fields, observing that they were not surrounded by fences or guards and that they did not reflect recent cultivation or care. He adds that he did not provide agents Gassman and Vette with the dimensions of the fields, that he was never observed harvesting marijuana and had no marijuana in his possession at the time he was arrested, and that he did not own the land on which the marijuana was growing. Finally, he emphasizes the fact that he took agents Gassman and Vette to the fields before receiving any payment. According to Culpepper, had Gassman and Vette not been government agents, nothing would have prevented them from refusing to pay him and then harvesting the fields without his consent.

This argument is not persuasive. Although Culpepper now states that the fields did not reflect recent cultivation or care, none of the witnesses so testified at trial. In any event, the condition of the fields was only one of many factors to be considered in determining whether Culpepper had constructive possession of the marijuana growing there. Similarly, the state of legal title to the fields and the inprecise dimensions of the fields are not germane to the question whether he had the power and ability to exercise dominion and control over the marijuana.

In addition, as circumstantial evidence may be used to prove constructive possession, the fact that Culpepper was not observed harvesting the marijuana and had none of it on his person when arrested is not dispositive. Nor is it especially significant that agents Gassman and Vette may have been able to harvest the marijuana without paying for it. Constructive possession need not be exclusive, and the agents would have never have been in a position to take advantage of their knowledge had Culpepper not first guided them to the fields.

Viewed in the light most favorable to the government, Culpepper's offer to Gassman to sell the fields, his directing agents Gassman and Vette to them, his statements that he had planted the marijuana growing there and had harvested it on numerous occasions, and the fact that the marijuana was, just as Culpepper told the government agents, ready to be harvested, demonstrate that he had the power and ability to exercise dominion and control over the marijuana in the two fields and "an appreciable ability to guide the destiny of the drug." We conclude that the evidence was sufficient to prove that Culpepper had constructive possession of the marijuana.[1]

### Bad Acts Testimony

Culpepper next proposes that the trial court erred in allowing testimony concerning his intent to shoplift gloves and snippers from the store in Goodland, Kansas. No objection was made to this testimony at

---

1. Culpepper's reliance on *United States v. Manzella*, 791 F.2d 1263 (7th Cir.1986) is misplaced. In *Manzella*, the court found the evidence insufficient to demonstrate that the defendant, who served as a broker in arranging a sale of cocaine, had constructive possession of the drug. The court noted that there was no evidence that the defendant had any control over the cocaine that he tried to obtain for the buyer and referred to the defendant's unsuccessful attempts to arrange the delivery of the drug. The court declared that "he who can assure the delivery of the drug controls it," but found that the defendant could make no such assurance. *Id.* at 1267.

This case is distinguishable from *Manzella*. Unlike the defendant there, Culpepper was able to assure delivery of the drug in question.

trial; but Culpepper now argues that its admission violated Rule 404(b) of the Federal Rules of Evidence and was plain error, so that he is entitled to reversal.

Under the plain error standard, reversal is mandated only to correct "particularly egregious errors," that is, those errors that "seriously affect the fairness, integrity, or public reputation of judicial proceedings." *United States v. Young*, 470 U.S. 1, 105 S.Ct. 1038, 1046–1047, 84 L.Ed.2d 1, 12 (1985), quoting *United States v. Frady*, 456 U.S. 152, 163, 102 S.Ct. 1584, 1592, 71 L.Ed.2d 816, 827 (1982), and *United States v. Atkinson*, 297 U.S. 157, 160, 56 S.Ct. 391, 80 L.Ed. 555, 557 (1936). In order to determine whether a trial court has committed plain error, the entire record must be reviewed. *Hooks*, 780 F.2d at 1533 (10th Cir.1986).

Rule 404(b) of the Federal Rules of Evidence provides:

> Evidence of other crimes is not admissible to prove the character of a person in order to show he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

The grounds specified for admissibility are not exclusive; evidence of other crimes or acts relevant to any issue at trial may be admitted unless this evidence tends to prove only criminal disposition. *United States v. DeLuna*, 763 F.2d 897, 912 (8th Cir.), *cert. denied* 474 U.S. 980, 106 S.Ct. 382, 88 L.Ed.2d 336 (1985). In determining whether to admit this evidence, the trial court must weigh its probative value against its prejudicial effect. *United States v. Smith*, 629 F.2d 650, 652 (10th Cir.), *cert. denied* 449 U.S. 994, 101 S.Ct. 532, 66 L.Ed.2d 291 (1980); *United States v. Bridwell*, 583 F.2d 1135, 1140 (10th Cir. 1978).

■ In this instance, the items that Culpepper stated he intended to shoplift were to be used in harvesting marijuana from the two fields. Culpepper's statement was relevant to his knowledge of the condition of the fields and thus to his power and ability to exercise dominion and control over the marijuana growing there. It was not mere proof of a general criminal disposition, and its probative value outweighed any prejudicial effect it might have had. Accordingly, we find that the trial court did not commit plain error in allowing this testimony.

### *Jury View of the Kansas City, Kansas Field*

■ Culpepper contends that the trial court erred in refusing to allow the jury, upon his request, to view the Kansas City, Kansas field. He maintains that it was critical for the jury to view the field in order to determine whether he exercised dominion and control over it.

Whether the jury is permitted to view evidence outside the courtroom is a matter for the discretion of the trial court. *United States v. Gallagher*, 620 F.2d 797 (10th Cir.) *cert. denied* 449 U.S. 878, 101 S.Ct. 224, 66 L.Ed.2d 100 (1980). Here, the trial court denied Culpepper's motion to view the field on the grounds that there had been a change in circumstances since he took the government agents to the Kansas City, Kansas field in August, 1986. The trial court took notice of the fact that two months had elapsed and that an exceedingly rainy fall would have changed the field's condition substantially. We find no error in this reasoning. In addition, we note that photographs of the Kansas City, Kansas field, taken the day after Culpepper took the government agents there, were admitted into evidence. Culpepper has no explanation why these photographs are not sufficient to show the condition of the field. The trial court did not abuse its discretion in denying Culpepper's motion to view the field.

A second matter is before us. On September 30, 1987, Culpepper moved to be admitted to bail pending disposition of his case on appeal. The district court denied his motion, from which decision he also appealed, in our No. 87–2529. Today's affirmance of the underlying conviction is an event that overtakes the bail appeal; no bail controversy remains to be decided.

For the above stated reasons, we AFFIRM in No. 86–2867, and DISMISS the appeal in No. 87–2529 because it is moot.