**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Roosevelt FLEMING, Defendant–
Appellant.**

No. 00–2608.

United States Court of Appeals,
Seventh Circuit.

Argued June 12, 2001.

Decided Aug. 10, 2001.

Before MANION, DIANE P. WOOD, WILLIAMS, Circuit Judges.

ORDER

After Roosevelt Fleming, Laron Colbert, and Tuan Williams were caught transporting drugs from Chicago to Bangor, Michigan, a jury found Fleming guilty of possession with intent to distribute cocaine and crack, 21 U.S.C. § 841(a)(1). On appeal, Fleming challenges the sufficiency of the evidence. We affirm.

On August 23, 1999 Fleming, Colbert, and Williams embarked on a trip to Chicago from Bangor to purchase drugs for resale. Colbert and Williams had planned the trip a few days before. Colbert arranged to purchase drugs from a contact in Chicago, and Williams had his mother rent a car for the trip by telling her he was going to visit a friend in Indiana. While Fleming was told about the trip before it occurred, there was no plan for him to go along. On their way out of town, however, Williams and Colbert saw Fleming and invited him to accompany them.

On August 24, after shopping and spending the night in Gary, Indiana, the trio arrived at the apartment building where Colbert was to meet his drug contact. Williams gave $6,000 to Colbert who then entered the building to purchase the drugs. Twenty minutes later, Colbert returned with approximately 4.5 ounces of crack and 4 .5 ounces of cocaine. Williams inspected the drugs and then hid them under the hood of the car.

Driving back to Bangor on the I–94 expressway in Indiana, the trio had an accident with a truck driven by Gerald Hattery. In testimony that contradicted earlier statements he gave to the police, Williams stated at trial that, after the two vehicles pulled to the side of the expressway, Colbert went to speak to Hattery, who was parked about 100 yards behind the car, while Williams sought to hide the drugs and a gun that was in the trunk of the car. According to his trial testimony, Williams placed the drugs into a plastic bag containing snacks he had bought at a convenience store, walked down into a ravine by the side of the expressway, and hid the bag in a tree. Williams then placed the gun in a pillowcase and had Fleming hide it in the ravine. Williams and Fleming then walked up and down the side of the highway to make sure that the hidden items were not visible from the highway.

But in his previous statements to the police Williams had said that Colbert hid both the drugs and guns; at trial he insisted that he lied to the police in an attempt to protect Fleming, whom Williams felt should not be blamed because "he didn't really have to be there anyway." Hattery corroborated Williams's trial testimony in that Hattery testified that he saw two men, one of them wearing a yellow shirt, go into the ravine. Williams testified that only Fleming was wearing a yellow shirt.

After the police arrived, Hattery went into the ravine to investigate the location where Williams and Fleming had been. Hattery discovered the gun and turned it over to the police, who then handcuffed Fleming, Colbert, and Williams. A search of the ravine by the police turned up the drugs. Fleming, Colbert, and Williams were arrested and subsequently indicted on one count of possessing with the intent to distribute cocaine and one count of possessing with the intent to distribute crack.

Colbert and Williams pleaded guilty and testified against Fleming at his January 2000 trial. Colbert and Williams admitted selling cocaine and crack in Bangor throughout the summer of 1999 and asserted that Fleming would occasionally join in the activity. Many of the drug sales took place in front of a convenience store in downtown Bangor. The owner of the convenience store testified that Fleming and Colbert would hang out in front of his store and engage in what appeared to be drug transactions on a daily basis during the summer of 1999.

Colbert testified that he purchased the drugs sold by the trio from contacts in Chicago. During the summer of 1999, Colbert made a total of eight trips to Chicago. Williams accompanied Colbert on most of those trips, and Fleming accompanied both of them on one of the trips.

With regards to the trip for which the trio was arrested, both Colbert and Williams testified that Fleming's role was quite limited. According to Colbert and Williams, Fleming was not involved in planning the trip and was not needed for the trip to be successful. Both codefendants agreed that Fleming was merely "along for the ride." They also testified that Fleming did not touch the drugs or provide any money towards the purchase of the drugs. Furthermore, though Williams had agreed to pay Colbert $500 for helping obtain the drugs, he had not offered to pay Fleming any money for his involvement. Fleming, however, was aware of the purpose of the trip. Colbert also testified that the three decided they would all sell the drugs upon returning to Bangor, though he did not state when this decision was made.[1]

The jury found Fleming guilty on both counts of the indictment. At sentencing, the district court applied a two-level upward adjustment for possession of a firearm. U.S.S.G. § 2D1.1(b)(1), and granted Fleming a two-level downward adjustment for having a minor role in the offense, U.S.S.G. § 3B1.2(b), leaving Fleming with a base offense level of 32 and a criminal history category of I. The district court sentenced Fleming to 136 months' imprisonment, in the middle of the applicable 121- to 151–month guideline range, and five years' supervised release. At separate sentencing hearings, Colbert and Williams both received 70 months' imprisonment after receiving downward departures for their assistance to the government.

On appeal, the government argues that Fleming's convictions are proper both because he constructively possessed the drugs at issue and because he aided and abetted Colbert and Williams in their drug dealing. Fleming challenges the sufficiency of the evidence for both counts. In reviewing a jury's verdict for sufficiency of the evidence, the panel must view the evidence in the light most favorable to the government and may reverse only if no rational trier of fact could have found the essential elements beyond a reasonable doubt. *See United States v. Stott*, 245 F.3d 890, 904 (7th Cir.2001); *United States v. Hunte*, 196 F.3d 687, 691 (7th Cir.1999).

 In order to support Fleming's convictions, the government needed to show that Fleming (1) knowingly or intentionally possessed the drugs, (2) possessed the drugs with intent to distribute, and (3) knew the drugs were a controlled substance. *See Hunte*, 196 F.3d at 692. The possession element may be shown through direct or circumstantial evidence that Fleming had constructive or joint possession of the drugs. *See id; United States v. Kitchen*, 57 F.3d 516, 521 (7th Cir.1995). Constructive possession exists where a defendant has ownership, dominion, authority, or control over the drugs. *See United*

---

**1.** On direct Colbert testified as follows regarding the disposition of the drugs:

> Q: Mr. Colbert, was there as [sic] discussion between yourself, Mr. Williams, and Mr. Fleming regarding the drugs that you purchased?
> A: Yes, there was.
> Q: Was there any discussion regarding what was going to happen with those drugs?
> A: Yes.

> Q: Do you know based on those discussions what was going to happen with those drugs?
> ....
> A: Yes, I do.
> Q: What was going to happen with those drugs?
> A: They was [sic] going to be separated, and they was [sic] going to be passed down the line, and they was [sic] going to be sold.
> Q: Who was going to sell those drugs?
> A: Myself, Roosevelt Fleming, and Tuan Williams.

*States v. Richardson,* 208 F.3d 626, 632 (7th Cir.2000). Where possession of the drugs is nonexclusive, this court requires a nexus between the defendant and the drugs so that innocent bystanders are not convicted. *See id.; Hunte,* 196 F.3d at 692.

Fleming, who did not testify at trial, argues that he did not constructively possess the drugs because he did not own them and did not have any authority or control over them. In support, Fleming notes that he was not involved in planning the trip to Chicago, did not own or drive the vehicle, and did not have access to the drugs at any time. He asserts that Williams, who provided the money for the drugs, had exclusive possession of the drugs and would have rebuked Fleming if Fleming had tried to possess the drugs.

As Fleming correctly points out, both Colbert and Williams acknowledged that Fleming was basically just "along for the ride"; he did not play any role in setting up the drug buy, and he came along for the trip only because Colbert and Williams happened to drive by him on their way out of town. The government notes that in *United States v. Hunte,* this court affirmed the conviction for possession with intent to distribute of a defendant who was just "along for the ride" with a group of people who were transporting drugs. *See Hunte,* 196 F.3d at 689. That case does not carry the day for the government, however, because unlike with Fleming, the defendant in *Hunte* drove one of the vehicles on the trip, registered for a hotel room for some of the members of the group, helped hide their activities, and assisted in sampling the drugs. *See id.* at 692.

Despite Fleming's minor involvement, however, there is evidence in the record from which a rational juror could determine that Fleming had joint possession of the drugs with Colbert and Williams. First, according to Colbert's testimony, the trio had agreed to sell the drugs purchased on the trip upon returning to Bangor, and such agreement shows that Fleming had a possessory interest in the drugs. *See United States v. Hunter,* 145 F.3d 946, 950 (7th Cir.1998) (defendant's constructive possession of drugs shown by his plan to sell drugs possessed by codefendant); *United States v. Salazar,* 983 F.2d 778, 782 (7th Cir.1993) (defendant's intent to complete drug sale helped to demonstrate his constructive possession of drugs); *United States v. Massey,* 687 F.2d 1348, 1354 (10th Cir.1982) (defendant who was to receive one-fourth share of drugs being transported by two other people constructively possessed the drugs). Colbert's testimony is supported by the evidence of Fleming's past participation in selling drugs with Colbert and Williams which included accompanying them on a prior trip to Chicago to buy drugs. Finally, Fleming took steps to help conceal the trio's illegal activity when he knew that the police were coming to the scene of the accident. *See, e.g., Hunte,* 196 F.3d at 692 (finding requisite nexus between defendant and drugs in part because defendant helped conceal drug activities from view by closing window blinds). Given the high hurdle for a sufficiency-of-the-evidence challenge, *see, e.g., United States v. Phillips,* 239 F.3d 829, 842 (7th Cir.2001) ("a jury's verdict will be overturned only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt"), such evidence is enough to show that Fleming was more than an innocent bystander and to establish a nexus between Fleming and the drugs.

Given that there is sufficient evidence to support Fleming's conviction on a joint possession theory, we need not address the government's argument, or Fleming's disagreement, that Fleming aided and abet-

ted Colbert and Williams in their drug dealing.

For the foregoing reasons, we AFFIRM Fleming's conviction.