**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 31, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

ROBERT SEDILLO-GUTIERREZ,

    Defendant-Appellant.

No. 06-2227
(D.C. No. CR 05-217- RB)
(D. New Mexico)

---

**ORDER AND JUDGMENT**[*]

---

Before **HENRY,** Chief Circuit Judge, **McWILLIAMS**, Senior Circuit Judge, and **HOLMES,** Circuit Judge.

---

On February 3, 2005, Robert Sedillo-Gutierrez (the defendant) was charged in a one-count indictment filed in the United States District Court for the District of New Mexico with possession with an intent to distribute 500 grams and more of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(A) and 18 U.S.C. § 2. Defendant pled not guilty and on August 15, 2005, a jury trial commenced, but a mistrial was declared on August 23, 2005. A second trial was commenced on March 27, 2006, and on March 30, 2006, the jury

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

returned a verdict of guilty as charged. At that trial, when the United States rested its case, counsel moved for a directed verdict of not guilty on the grounds that the United States "hadn't proven a sufficient nexus between my client and the lot located at 814 W. 12th St." Fed. R. Crim. P. 29. The district court denied that motion, whereupon counsel elected to call no defense witnesses. On March 30, 2006, the jury returned a verdict of guilty as charged. On August 7, 2006, the district court sentenced defendant to imprisonment for 360 months, ten years of supervised release, and a $100 special assessment. Defendant filed a timely notice of appeal.

On appeal, counsel frames the one issue he seeks to raise on behalf of the defendant as follows: "There was not sufficient evidence to find that Mr. Sedillo possessed the contraband in question." Our review of the matter convinces us that there was "sufficient evidence that Mr. Sedillo possessed the contraband in question" and we therefore affirm.

The government's "theory of the case" was that the defendant was a dealer in methamphetamine and that he sold the methamphetamine out of a house located at 1101 North Kansas Avenue in Roswell, New Mexico. That house was not defendant's place of residence, but the residence of a "friend." Continuing with the government's "theory": the defendant hid his supply of methamphetamine in an abandoned lot located at 814 W. 12th St., which was adjacent to the backyard of the residence at 1101 North Kansas and, as said, sold

methamphetamine to his various customers who would pick up the contraband from 1101 North Kansas.

A key witness at trial for the government was one Estanislada Cardona, hereinafter referred to as C.I. She testified at trial that she first met the defendant in 2002, when she was approximately 23 years of age. In the Fall of 2004, the police raided her home and found marijuana, methamphetamine, and drug paraphernalia in her home. At that time, the C.I. said she had been buying methamphetamine from the defendant for over a year at $1,100 for one ounce, part of which she was using, but otherwise selling some of it to others. She said, on occasion, she would go as often as once or twice a day to get methamphetamine from the defendant at 1101 North Kansas and either use it or resell it. On many occasions when she went to 1101 North Kansas to pick up methamphetamine from the defendant she observed the defendant "walk to the backyard and be back in the backyard somewhere for a few minutes and then he'd walk back to the front." She also testified that the day she was released from jail, she, at the request of the police, did go to 1101 North Kansas to buy some more methamphetamine, but that the defendant on that occasion refused to sell her any "because she had just gotten out of jail." She also estimated that she had made nearly $500 a day selling methamphetamine which she had obtained from the defendant. In this latter connection, she "guessed" that defendant had money from sales of the methamphetamine "buried at his mom's house."

-3-

The evidence presented at trial also showed that after talking to the C.I. the police set up a surveillance at 1101 North Kansas and noted that the defendant would go to the house and disappear behind the residence located thereon. On such occasion, a vehicle would arrive and stop in front of the residence and the defendant would reappear and make contact with the person in the vehicle.

At about this point in their investigation of this entire matter, the police obtained a search warrant for the house at 1101 North Kansas. When executing the warrant, they found an elderly man living therein. The defendant was not inside the house when the officers arrived. The officers searched the house but found no contraband, nor did they find any contraband in the yard area of the house itself. One of the officers testified that he saw a ladder propped up against a corrugated steel fence at the rear of the property on North Kansas. The fence separated the backyard of 1101 North Kansas from the abandoned lot at 814 W. 12th St. In this connection, the testimony presented at trial by the government also showed that the out-of-state owner of the adjacent lot, which looked like a "junk yard," gave the police permission to search his property, and the search ultimately disclosed a "brick-type form" of a substance which subsequently was determined to be about eight pounds of methamphetamine. Witnesses stated that the amount of methamphetamine was greater than one would possess for "personal use" and was consistent with "sales and distribution." While searching the adjacent lot, the police also found a cellular phone receipt printed with defendant's

name and an address which was later determined to be that of defendant's mother.

Another witness, who lived at 816 W. 12th St., testified at trial that he had seen defendant "climbing the fence" between the backyard of 1101 N. Kansas and the "junk yard" at 814 W. 12th St., and that he had advised police of that fact when he saw police executing the search warrant at 1101 N. Kansas.

Acting on the C.I.'s statement, the police later obtained the consent of defendant's mother to search her property, and "buried beneath a tree" found a "pickle jar" which contained $77,200 in cash. Later, a "list of items needed to make methamphetamine" was found in an FBI search of defendant's residence.

As stated, the one issue on appeal is whether the evidence is sufficient to support the jury's verdict that the defendant was guilty of possessing with an intent to distribute the methamphetamine found hidden in the abandoned lot adjacent to the rear of the residence at 1101 North Kansas. In this regard, in *United States v. Williamson*, 53 F.3d 1500, 1514 (10th Cir.1995), we spoke as follows:

> In reviewing a challenge to the sufficiency of the evidence, we review the record *de novo*, "and ask only whether, taking the evidence--'both direct and circumstantial, together with the reasonable inferences to be drawn therefrom'--in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt. In order to conclude the evidence was insufficient, as a matter of law, to support a conviction, "we must find that no reasonable juror could have reached the disputed verdict." (Citations omitted).

Our study of the record leads us to conclude that the evidence is sufficient to support the jury's determination that the defendant possessed with an intent to distribute the methamphetamine found by the police secreted in an abandoned lot behind the residence at 1101 North Kansas. The government showed that defendant had constructive possession of the methamphetamine. In this latter connection, *see United States v. Culpepper*, 834 F.2d 879, 881-82 (10th Cir. 1987) (holding that defendant had constructive possession over marijuana found in fields he did not own, where he had the ability to exercise dominion and control over it).

In sum, the testimony of the C.I., which was obviously given credibility by the jury, showed that the defendant was indeed engaged in distributing methamphetamine out of and from the residence at 1101. No methamphetamine was found at that residence or at defendant's residence. However, a considerable amount of methamphetamine was located in the abandoned lot behind the residence at 1101. An officer had found a ladder at the rear of the 1101 residence propped up against the corrugated steel fence that separated the residence from the abandoned lot. And a neighbor testified that he had seen, a couple of weeks before, the defendant "climbing" the fence. Officers also found a cellular phone receipt in the abandoned lot which contained defendant's name and the address of his mother. Officers found $77,200 in cash in a pickle jar buried outside defendant's mother's house, and a list of items used to make methamphetamine at defendant's house. The evidence supports the verdict.

-6-

Judgment affirmed.

Entered for the Court

Robert H. McWilliams
Senior Circuit Judge