UNITED STATES of America, Plaintiff–Appellee,

v.

Mohammad HANIF, also known as Mohammad Noor, Defendant–Appellant.

No. 92–1285.

United States Court of Appeals, Tenth Circuit.

July 20, 1993.

David C. Japha, Denver, CO, for defendant-appellant.

John M. Hutchins, Asst. U.S. Atty. (James R. Allison, Interim U.S. Atty., Joseph T. Urbaniak, Jr., Asst. U.S. Atty., with him on the brief), Denver, CO, for plaintiff-appellee.

Before MOORE, BALDOCK and BRORBY, Circuit Judges.

BALDOCK, Circuit Judge.

Defendant Mohammad Hanif was convicted of importation of and possession with intent to distribute heroin, 21 U.S.C. §§ 952, 960, 841(a)(1), and two counts of conspiracy, 21 U.S.C. §§ 963, 846. Defendant appeals, claiming as follows: (1) the district court abused its discretion in failing to listen to tape recordings in camera; (2) insufficiency of the evidence; (3) inconsistent jury verdicts; and (4) the district court improperly increased Defendant's offense level by two levels for his role as organizer, leader, manager or supervisor. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742, and we affirm.

## I.

Construing the facts in a light most favorable to the government, *United States v. Rackley*, 986 F.2d 1357, 1360 (10th Cir.1993), the record reveals the following. In the winter of 1989, Abdul Latif met Defendant through Mohammad Zahir, an acquaintance of Latif's for whom Latif had previously delivered hashish. Latif initially contacted Zahir to obtain assistance in getting his sisters from India into the United States. At Zahir's house, Zahir introduced Latif to Defendant, calling Defendant his partner, friend and working associate. Defendant told Latif that he could get his sisters to the United States for a fee, or alternatively, Latif could smuggle heroin into the United States for Defendant. Latif had many more meetings at Zahir's house over the next few days, often with Zahir and another Zahir associate, Mohammad Sharif. At times, Defendant attended these meetings. At one of the meetings attended by Defendant, Latif agreed to serve as heroin courier and learned the details regarding his courier responsibilities.

Sometime later, Latif met Defendant at his house in Katmandu, Nepal. Latif and Defendant discussed Latif's employment as drug courier. Latif then flew to the United States, but did not carry any contraband at this time. In February 1990, Latif returned to Katmandu and stayed for ten days in Defendant's house awaiting instructions from Defendant regarding when and how the heroin transportation was to take place. During this time, Latif witnessed Defendant make telephone calls all over the world, Latif heard Sharif refer to Defendant as "the one in charge," and Latif received assurances that he would be paid sufficiently for his efforts.

Defendant then instructed Latif to go to Bombay. Defendant purchased Latif's plane ticket, gave Latif cash for his stay in Bombay, and provided a taxi, which was under Defendant's permanent hire, to take Latif to the airport. Latif arrived in Bombay and was joined several days later by Defendant and Sharif.

Defendant, Sharif and Latif stayed in Bombay for the next ten days. During this time, Latif began to get anxious and asked Defendant to give him the heroin so he could

make the delivery. In response to this request, Defendant told Latif that he was busy and would tell Latif when it was time to depart. When Latif asked a second time about his departure date, he was again told that Defendant and Sharif were busy doing business with others, and they would let him know when it was time to depart. While still in Bombay, Latif told Defendant that he was afraid of getting arrested, to which Defendant responded that Latif was obligated to deliver because he had promised and there was a plan to prevent his arrest.

Sometime in May 1990, Defendant and Sharif took Latif to a public telephone, where Latif spoke to Basir Aziz, Latif's brother-in-law who lived in California. Aziz was in London and had been recruited by Sharif to participate in the heroin transportation from London to the United States.

Aziz never met Defendant but spoke to him by telephone on occasion. Prior to leaving California for London, Aziz had received twenty to thirty telephone calls about the trip, some of them from Defendant. At one point, when Aziz had second thoughts about participating in the smuggling operation, Sharif threatened his family, a threat which Defendant later told Aziz to disregard.

Meanwhile, back in Bombay, Latif was told that he would transport the heroin from Bombay to London, where Aziz would take over and transport it to the United States with Latif accompanying him. On May 7, 1990, Latif was told that he would leave the next day. Defendant purchased Latif's ticket to London, and Sharif accompanied Latif by taxi to the Bombay airport. Although Sharif had no suitcase with him in the taxi, Latif noticed a suitcase when Defendant joined them at the airport. While waiting in the airport, Latif observed Defendant and Sharif holding the suitcase at different times. While Latif checked his own bag, he saw Defendant talking to customs officers, presumably about the other bag. Defendant had previously told Latif that he knew the Indian customs officials well, they all took bribes, and he would pay them to pass the bag through customs without searching it.

Defendant later told Latif that he had in fact paid the customs officials.

Latif flew to London and met Aziz, who had picked up the suitcase. Latif changed planes and flew to New York with Aziz. On the plane, Aziz told Latif that he had a telephone number to call in the United States to find out where to deliver the heroin and also told Latif to call Defendant and Sharif when they arrived in New York.

Aziz was arrested at customs. Because Latif and Aziz were separated at the New York airport before reaching customs, Latif did not know of the arrest. Latif then flew home to California, where his wife, who is Aziz's sister, told him Aziz had been arrested. Aziz pleaded guilty to importation and decided to cooperate with the government.

After considerable pressure by phone from Sharif and Defendant regarding the location of the heroin and after considerable pressure from his family to help his brother-in-law, Latif went to New York City to cooperate with the government on Aziz's behalf. Latif provided the government with the telephone number which was to be called to arrange delivery of the heroin. The number was registered to a residence in Broomfield, Colorado under the name Suliman Aslamy. The government set up a delivery by Latif to Aslamy, but Aslamy detected the surveillance and failed to pick up the heroin.

In May, 1991, Defendant was arrested in Nepal on a weapons charge. The United States Drug Enforcement Agency learned of Defendant's arrest and made arrangements to bring Defendant to the United States for prosecution on drug trafficking charges. The grand jury indicted Defendant on ten counts. Counts 1 through 4 alleged a separate 1989 drug importation scheme,[1] counts 5 through 8 related to the 1990 drug importation scheme described in the facts above, and counts 9 and 10 alleged obstruction of justice and witness tampering. Defendant was convicted of counts 5 through 8: (1) conspiracy to import heroin, 21 U.S.C. § 963 (count 5); (2) importation and aiding and abetting the importation of heroin, 21 U.S.C. §§ 952, 960, 18 U.S.C. § 2 (count 6); (3) conspiracy to

---

1. We do not discuss these facts because the jury acquitted Defendant of these charges.

possess with intent to distribute and to distribute heroin, 21 U.S.C. § 846 (count 7); and (4) possession with intent to distribute and aiding and abetting the possession with intent to distribute heroin, 21 U.S.C. § 841(a)(1), (b)(1)(A), 18 U.S.C. § 2 (count 8). He was acquitted of all other counts. Defendant's initial offense level was 32 but was adjusted upward to 34 for his leadership role in the offense. With a criminal history category of I, Defendant's guideline range was 151 to 188 months. The district court sentenced him to 170 months with credit for time already spent in official detention.

## II.

■ Defendant first alleges that the district court abused its discretion in failing to listen to tape recordings in camera and specifically alleges that one tape was erroneously admitted. The record before us does not include the tapes, but there were apparently more than twenty tapes, which contained telephone conversations from the United States to India and Nepal. These conversations occurred after Latif began cooperating with the government, and the tapes reflect arrangements made for delivering the heroin in the United States. The conversations were usually between Latif and either Defendant or Sharif and were admitted into evidence through Latif with Latif often clarifying certain references made by the tapes' speakers. The tapes were in a foreign language, and their written translations were admitted into evidence along with the tapes. The district judge did not listen to the tapes in camera but found them admissible after reading their English translations and listening to them in the presence of the jury.

■ We construe Defendant's argument to be that the district court violated Federal Rule of Evidence 103(c), which provides that "[i]n jury cases, proceedings shall be conducted, to the extent practicable, so as to prevent inadmissible evidence from being suggested to the jury by any means." The district court has broad discretion in controlling the conduct of a trial, which includes broad discretion in determining under Rule 103(c) whether it is practicable to view evidence for admissibility outside the presence of the jury. *See United States v. Wellington,* 754 F.2d 1457, 1469 (9th Cir.), *cert. denied,* 474 U.S. 1032, 106 S.Ct. 592, 88 L.Ed.2d 573 (1985). Defendant must allege prejudice— *i.e.,* that the district court admitted inadmissible evidence—to allege a Rule 103(c) violation. *International Merger & Acquisition Consultants, Inc. v. Armac Enterprises, Inc.,* 531 F.2d 821, 824 (7th Cir.1976) (Rule 103(c) is not applicable where evidence is not inadmissible).

■ The admissibility of tape recordings that are partially inaudible is also within the sound discretion of the trial court. *United States v. McIntyre,* 836 F.2d 467, 469 (10th Cir.1987). Recordings are admissible "unless the inaudible portions are so substantial as to render untrustworthy the recording as a whole." *Id.* at 469–70; *United States v. Davis,* 780 F.2d 838, 846 (10th Cir.1985). "Admission is especially appropriate where a witness who heard the statements also testifies and the recording gives independent support to his testimony." *Davis,* 780 F.2d at 846.

We hold that the district court did not abuse its discretion in failing to hold an in camera inspection, especially considering that this was a ten-day trial with numerous witnesses and dozens of tape recorded conversations, all of which, as far as we can tell from the record, were in a language foreign to the court, and considering that the court found all the recordings admissible after hearing them. Furthermore, Defendant's only allegation of prejudice is that one of the tapes, which contained a thirty-second inaudible portion, was improperly admitted. Because Defendant has failed to provide us with a copy of this tape and has also failed to provide us with the English translation of the tape, we are unable to review whether the district court abused its discretion in determining that the tape remained trustworthy despite its inaudible portion.[2] Accordingly,

---

**2.** "Copies of key trial exhibits should be included if the appeal requires an analysis of those exhibits." General Order, 10th Cir., October 25, 1990, p. 7. Although defense counsel in his designation of record on appeal requested inclusion of "all trial exhibits," trial exhibits may only

we reject Defendant's argument that the district court violated Rule 103(c).

## III.

■ Defendant next contests his conspiracy to import and his possession with intent to distribute convictions, alleging there was insufficient evidence to show that he constructively possessed the heroin. Defendant's allegation that possession is a necessary element in a conspiracy to import case has no merit in light of our decision in *United States v. Rios*, 611 F.2d 1335, 1338, 1345–46 (10th Cir.1979) (possession is not an essential element of conspiracy to import), *cert. denied*, 452 U.S. 918, 101 S.Ct. 3054, 69 L.Ed.2d 422 (1981).

■ Although possession is not an element of conspiracy to import, it is an element that the government must prove in a possession with intent to distribute case. *United States v. Hager*, 969 F.2d 883, 888 (10th Cir.), *cert. denied*, — U.S. —, 113 S.Ct. 437, 121 L.Ed.2d 357 (1992). To prove possession, the government must show that Defendant had either actual or constructive possession of the heroin. *Hager*, 969 F.2d at 888. The evidence offered by the government to show possession is considered insufficient if no reasonable jury could have found Defendant guilty beyond a reasonable doubt. *United States v. Ratchford*, 942 F.2d 702, 703 (10th Cir.1991), *cert. denied*, — U.S. —, 112 S.Ct. 1185, 117 L.Ed.2d 427 (1992).

■ There was ample evidence in the record from which a reasonable jury could have found that Defendant had actual possession of the heroin. Latif testified that Defendant himself handled the suitcase containing the heroin destined for the United States at the airport in Bombay. To be convicted of possession with intent to distribute, it is not necessary that the possession occur within the United States or its territories. Under 21 U.S.C. § 841(a)(1), the United States "may exercise jurisdiction over acts done out-

side its geographical jurisdiction which are intended to produce detrimental effects within it." *United States v. Arra*, 630 F.2d 836, 840 (1st Cir.1980); *see also United States v. Larsen*, 952 F.2d 1099, 1100–01 (9th Cir. 1991); *United States v. Wright–Barker*, 784 F.2d 161, 167–68 (3d Cir.1986); *United States v. Orozco–Prada*, 732 F.2d 1076, 1087–88 (2d Cir.), *cert. denied*, 469 U.S. 845, 105 S.Ct. 154, 83 L.Ed.2d 92 (1984); *United States v. Baker*, 609 F.2d 134, 137–39 (5th Cir.1980).

■ Furthermore, there was ample evidence that Defendant constructively possessed the heroin in the United States. Constructive possession means that Defendant has "some appreciable ability to guide the destiny of the drug." *United States v. Massey*, 687 F.2d 1348, 1354 (10th Cir.1982) (citation omitted). To constructively possess drugs, Defendant must have knowingly held the power to exercise dominion and control over the drugs in the United States. *United States v. Culpepper*, 834 F.2d 879, 881–82 (10th Cir.1987); *Massey*, 687 F.2d at 1354. Constructive possession may be joint among several individuals. *Culpepper*, 834 F.2d at 881–82; *Massey*, 687 F.2d at 1354. While constructive possession may be established by circumstantial evidence, the government must establish that there was a sufficient nexus between the drug and the accused. *Culpepper*, 834 F.2d at 882.

Applying these settled principles to this case, there was evidence that Defendant was guiding the destiny of the drug in the United States and therefore, constructively possessed the heroin. Although Latif received most of his instructions, once he reached the United States, from Sharif and not Defendant, there was ample evidence that Defendant was either Sharif's partner or his boss, and therefore, anything Sharif said had been decided jointly with Defendant or was said pursuant to Defendant's instruction. Thus, a reasonable jury could have convicted Defen-

---

be designated if they are "retained by the district court." *See id.* at 2–3. In this case, it appears that defense counsel has possession of all trial exhibits, and therefore the necessary exhibits should have been "submitted in an addendum to [Defendant's] brief if referred to therein." *Id.* at

2. "[T]he court is under no obligation to remedy any failure of counsel to fulfill [his or her] responsibility" to see that the record excerpts are "sufficient for consideration and determination of the issues on appeal." *Id.* at 5.

dant of possession with intent to distribute under 21 U.S.C. § 841(a)(1) using either an actual or constructive possession theory.[3]

## IV.

 Defendant's third challenge to his conviction is an allegation that the jury verdicts were inconsistent. Defendant argues that the jury believed his alibi defense for counts 1 through 4, relating to a 1989 importation scheme, but did not believe his alibi defense for counts 5 through 8, relating to the 1990 importation scheme. Given that the evidence supporting the 1989 scheme was different than the evidence supporting the 1990 scheme, we see no inconsistency in the jury's rejection of one alibi defense and acceptance of another. More importantly, even if we did find the jury's verdict to be inconsistent, it would not be a basis to reverse Defendant's conviction. *United States v. Powell,* 469 U.S. 57, 68–69, 105 S.Ct. 471, 478–479, 83 L.Ed.2d 461 (1984); *United States v. Hill,* 971 F.2d 1461, 1468–69 (10th Cir.1992) (en banc).

## V.

Finally, Defendant challenges his sentence, alleging that the district court improperly increased his offense level for being an organizer, leader, manager or supervisor in the drug importation scheme. U.S.S.G. § 3B1.1(c). The district court applies the preponderance of the evidence standard to determine adjustments under the Guidelines. *United States v. Guadalupe,* 979 F.2d 790, 795 (10th Cir.1992). We review the district court's determination under the clearly erroneous standard. *United States v. Brown,* 995 F.2d 1493, 1500 (10th Cir.1993) (citing *United States v. Backas,* 901 F.2d 1528, 1529

(10th Cir.), *cert. denied,* 498 U.S. 870, 111 S.Ct. 190, 112 L.Ed.2d 152 (1991)).

In order to be a supervisor in the criminal activity, "one needs merely to give some form of direction or supervision to someone subordinate in the criminal activity." *Backas,* 901 F.2d at 1530. Among the factors which a court may consider are the defendant's exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity and the degree of control and authority exercised over others. *Brown,* 995 F.2d at 1500 (citing § 3B1.1 Application Note 3).

Clearly, the government presented ample evidence to sustain its burden. Defendant exercised considerable decision-making authority, and he recruited accomplices. Furthermore, Defendant gave direction to Latif, Aziz, and possibly Sharif, and Defendant arranged for the bribery of customs officials and extensive travel and travel plans. Therefore, the district court's finding that Defendant was an organizer, leader, manager or supervisor in the importation scheme was not clearly erroneous, and the two-point offense level increase was proper.

AFFIRMED.

---

**3.** Although not argued by the government, there was also ample evidence to show that Defendant aided and abetted Latif's possession of the heroin by providing the heroin and paying off Indian customs officials. Because possession is not an element to a charge of aiding and abetting another's possession with intent to distribute, *United States v. Williams,* 985 F.2d 749, 753 (5th Cir. 1993), neither actual nor constructive possession need have been proven by the government to convict Defendant under this prong of indictment count 8. However, count 8 charged that Defendant did "unlawfully, knowingly, and intentionally possess with intent to distribute, *and* aid and abet and cause the possession with intent to distribute." (emphasis added) Therefore, the use of the conjunction, "and," may have precluded the government from relying solely on an aiding and abetting theory.