**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 4 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

JAMES CARL MAASS,

    Defendant-Appellant.

No. 96-1198
(D.C. No. 95-CR-34-02-S)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRORBY, EBEL,** and **KELLY**, Circuit Judges.

James Carl Maass ("Maass") appeals his conviction and sentence in federal district court on counts of conspiracy to distribute methamphetamine, possession with intent to distribute methamphetamine, and use of a weapon in the course of drug-related crimes. We affirm Maass' conviction and sentence.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

# BACKGROUND

In November, 1994, undercover agent Thomasson began building connections with a group of individuals that law enforcement officials suspected of operating an illegal firearms ring in Colorado Springs, Colorado. Thomasson soon began to suspect that the group was more involved in selling methamphetamine than firearms, and adjusted his investigation accordingly. During the course of the investigation, a member of the group offered to introduce the agent to Maass, who was the ring's main supplier of drugs. Maass agreed to arrange a sale of methamphetamine to Thomasson. There was evidence presented that Maass carried firearms during his drug deal with Thomasson, and that he was prepared to shoot or kill to protect his methamphetamine business.

The first sale to Thomasson took place at the parking lot of an arcade in Manitou Springs, Colorado, on the evening of December 5, 1994. This transaction was attended by Maass, Danny Flores ("Flores") and another unidentified person. During this transaction, Maass carried a gun, and indicated to Thomasson his willingness to use it if passers by got too nosey. Thomasson gave Maass an agreed-upon sum of money. Maass then turned the money over to Flores and the unidentified person in exchange for methamphetamine.

On December 9, 1994, while visiting the home of co-conspirator Shannon McKane, Maass was arrested by Colorado Springs police officers for possession

of methamphetamine and drug paraphernalia. After his release on bond, Maass learned that one Sherrie Holmes might have been responsible for his and McKane's arrest. Maass kidnaped Ms. Holmes, then interrogated her in an effort to ascertain the extent of her cooperation with the police. Maass murdered Ms. Holmes on January 3, 1995.[1]

On January 5, 1995, Maass met with Thomasson and an undercover officer from the Colorado State Patrol to discuss ways of raising money to pay for Shannon McKane's bond. Maass offered Thomasson a package deal of a stolen automobile, weapons, and methamphetamine to raise the necessary money. Thomasson agreed to the deal. When Maass showed up in Manitou Springs on January 10, 1995 to consummate the deal, he was arrested by Thomasson and other law enforcement personnel.

Maass was indicted for conspiracy to distribute methamphetamine, possession with intent to distribute methamphetamine, and related firearms offenses. Maass was convicted on all counts. At sentencing, the district court calculated his offense level at 43, an automatic life sentence, based upon his

---

[1] Maass was convicted of first degree murder in Colorado state court for the killing of Ms. Holmes. In the federal trial, the testimony about Maass' murder of Ms. Holmes came in at the sentencing stage of trial rather than at the guilt phase.

killing of Ms. Holmes in connection with his methamphetamine distribution offenses. Maass now appeals his convictions and sentence.[2]

## ANALYSIS

### I. Convictions

### A. Evidentiary issues

Maass claims that the district court's admission of evidence regarding his involvement in illegal sales of weapons and stolen cars, his threats to use weapons against anyone who informed on him, and the affiliation of certain members of the conspiracy with the Banditos street gang, all violated Fed. R. Evid. 404(b).

We review a trial court's decision to admit prior act evidence for abuse of discretion. See United States v. Johnson, 42 F.3d 1312, 1315 (10th Cir. 1994). We note at the outset that Rule 404(b) applies only to evidence of crimes, wrongs, or acts that are extrinsic to the crimes charged.[3] See United States v. Orr, 864

---

[2] On July 10, 1998, Maass filed a motion with this court for leave to reopen briefing to supplement his brief on appeal with this court's opinion in United States v. Singleton. Maass did not raise this issue in his briefs or at oral argument, and we will not allow him to raise the issue for the first time at this late date. Therefore, his motion to reopen briefing is denied.

[3] The pertinent part of Fed. R. Evid. 404(b) reads as follows:

> **Other crimes, wrongs, or acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be

(continued...)

- 4 -

F.2d 1505, 1510 (10th Cir. 1988). Thus, Rule 404(b) does not apply to evidence admitted as proof of the charged conduct. "'An uncharged act [is not] extrinsic if it was part of the scheme for which a defendant is being prosecuted, or if it was 'inextricably intertwined' with the charged crime such that a witness' testimony 'would have been confusing and incomplete without mention of the prior act.'" United States v. DeLuna, 10 F.3d 1529, 1532 (10th Cir. 1993) (quoting United States v. Record, 873 F.2d 1363, 1372 n.5 (10th Cir. 1989)). An act done in furtherance of an alleged conspiracy "is not an 'other' act within the meaning of Rule 404(b), rather, it is part of the very act charged." United States v. Molina, 75 F.3d 600, 602 (10th Cir. 1996) (citation omitted).

Maass claims that the evidence pertaining to the sale of firearms and stolen guns and vehicles should not have been allowed because he was not charged with possession or sale of stolen firearms or vehicles. Maass relies mainly upon this court's decision in United States v. Sullivan, 919 F.2d 1403, 1416-17 (10th Cir. 1990). The facts of Sullivan can readily be distinguished from those in the present case. In Sullivan, defendants were charged, inter alia, with conspiracy to manufacture, possess, and distribute amphetamine in Oklahoma. See id. at 1408.

---

[3](...continued)
admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . .

At trial, the government repeatedly referred to the participation of one of the defendants in a separate and unrelated drug "cook" in Mississippi. See id. at 1413-14. The district court had reluctantly acquiesced in the government's argument that this evidence was part of the "history of the conspiracy." See id. at 1413. We reversed, holding that this bald assertion by the prosecutor was insufficient to meet the requirements of either Rule 403 or Rule 404(b). Because "the prosecutor made no effort to explain a probative purpose or connection of the earlier conduct in Mississippi to this case," we found that evidence to be clearly prejudicial and ordered a new trial. See id. at 1416. Because it was obvious that the "Mississippi cook" evidence at issue was not related to the crime charged, we did not address the possibility that it could be admitted as proof of the charged crimes.

In the present case, the evidence of Maass' involvement with the sale of stolen weapons and vehicles was very much inextricably intertwined with the crimes charged. Thomasson's testimony as to the ring's involvement in illegal firearm sales was necessary to an understanding of how Thomasson, an agent whose regular duties include the investigation of violations of firearms, explosives and arson laws, became involved with an investigation into a drug ring

in the first place.[4]  Moreover, evidence of Maass' plan to sell stolen guns and cars was part and parcel of his efforts to raise some needed cash to get a co-conspirator out of jail.  Unlike the remote, unconnected prior conduct at issue in Sullivan, the evidence of Maass' involvement in the sale of stolen firearms and cars was proof of an act done in furtherance of the conspiracy and was intrinsically intertwined with Thomasson's testimony; his testimony would have

---

[4] Maass did not contemporaneously object to this testimony by Thomasson, thus on appeal he may only challenge it as plain error.  See United States v. Russell, 109 F.3d 1503, 1514 (10th Cir. 1997).

been confusing and incomplete without mention of it.[5]  See Record, 873 F.2d at 1372 n.5.

Maass next attacks the admission of his tape-recorded comments regarding his use of firearms during his money-collecting activities and his threat to shoot or kill anyone who snitched on him.  In response to Maass' objection, the district court struck portions of the tape in which Maass spoke about his ammunition of choice, but allowed the rest because it elucidated how Maass ran his drug distribution business.  This court has held that evidence of the defendant's use of threats of violence in furtherance of the drug distribution conspiracy with which

_____

[5] The district court, immediately after the evidence of the proposed car/gun/drug package deal was admitted, issued the following limiting instruction to the jury:

> We have received evidence indicating some defendants may have allegedly been involved in the proposed sale of stolen automobiles and sale of illegal firearms.  The defendants in this case are not charged with the sale of stolen automobiles nor are they charged with the sale of illegal firearms.  You may not consider this evidence for any other purpose than the charges in the indictments.  Sometimes evidence is offered for limited purposes.  In this case, the limited purpose for which this evidence is offered is insofar as it relates  to the charges in this case involving allegations concerning the possession of and with intent to distribute methamphetamine and conspiracy to distribute methamphetamine and the use or possession of firearms in furtherance of these alleged drug crimes.  For this limited – for these limited purposes, you may give this evidence as much weight as you think it is entitled.

Thus, the court limited any improper impact the admission of this evidence may have otherwise had upon the jury.

he was charged is neither "an 'other' act within the meaning of Rule 404(b)" nor is it "improper character evidence under Rule 404(b)." Molina, 75 F.3d at 602; see also United States v. DeAngelo, 13 F.3d 1228, 1232 (8th Cir. 1994) ("[T]he jury in a criminal case is entitled to know about the context of a crime and any events that help to explain the context. . . . Moreover, we have noted that as direct evidence of the crime charged, the evidence of threats is not . . . Rule 404(b) evidence.") Thus, the district court's decision to allow evidence of Maass' threats of violence against others, as evidence of his involvement in the conspiracy, was not an abuse of discretion, as those threats were part of the scheme for which Maass was being prosecuted. See DeLuna, 10 F.3d at 1532.[6]

Finally, Maass claims that evidence that some of the members of the conspiracy were affiliated with the Banditos street gang was both unrelated to his crime and highly prejudicial. However, that information was inextricably intertwined with testimony as to the conspiracy's source of methamphetamine.

---

[6] Maass also claims that the government committed prejudicial error during closing arguments when it referred to portions of the tape that had been stricken by the court. Maass objected and requested a mistrial. The district court denied the motion for mistrial, but instructed the jury that the arguments of counsel are not evidence, and that the jury must decide if the information referred to by the government was in fact in evidence or not. This minor incident was not so egregious as to warrant "'the drastic action of declaring a mistrial,'" thus the district court did not abuse its discretion in refusing to declare a mistrial. United States v. Gabaldon, 91 F.3d 91, 94-95 (10th Cir. 1996) (citation omitted).

- 9 -

Preclusion of references to the Banditos would have made that testimony confusing and incomplete.

We find that the district court was well within its discretionary powers in allowing the challenged evidence.

## B. Prosecutorial misconduct

Maass claims that the district court erred by failing to declare a mistrial in the face of misconduct by the prosecution in questioning Maass' choice to exercise his right not to testify, in violation of Griffin v. California, 380 U.S. 609, 615 (1965). Maass asserts that the prosecution acted improperly on three occasions. First, on redirect examination, the government asked Thomasson if Maass had ever requested voice exemplars be made so that the voice on audio tapes the government claims to be Maass' could be verified. That was in response to Maass' attorney raising the issue on his cross-examination. Counsel for Maass objected to this question on the grounds that it suggested that Maass has a duty to provide evidence of his voice or take the stand so that the jury can hear his voice and compare it to the voice on the tapes. He then requested a mistrial. The court refused to grant a mistrial, but agreed that the government's question was improper. The court issued a cautionary instruction to the jury, informing it that the defendant was not under a duty to provide any evidence whatsoever.

- 10 -

Second, during the prosecution's closing statement, counsel for the government argued that "everyone has a right to plead not guilty. They have the right to say or not say anything they want in a courtroom." Again Maass objected and moved for a mistrial. The district court determined that the prosecution's language did not contain any implied criticism of Maass' decision not to testify, that it was simply a statement of the rights of the defendant. In addition, the court gave a curative instruction to the jury, reminding it that the defendant is under no duty to testify.

Third, during the governments' rebuttal closing argument, the prosecutor suggested that defense counsel's statement that there was no credible evidence against Maass belied the fact that there was an immense amount of evidence against him and showed a lack of understanding of the term "beyond a reasonable doubt." Maass' counsel objected to this argument on the basis that this was a personal attack against him and was not a comment on the evidence. The objection was overruled; nonetheless the district court issued an instruction to the jury that lawyers were entitled to argue about the evidence, and that was what the jury was there to consider: the evidence. Maass did not request a mistrial.

As a general proposition, "'a criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone.'" United States v. Oles, 994 F.2d 1519, 1524 (10th Cir. 1993) (quoting United States v.

Young, 470 U.S. 1, 11 (1985)).  Instead, we must review the prosecutor's conduct in light of the entire record.  See id.  Relevant to the inquiry is the degree of prejudice of the prosecutor's remarks, see United States v. Bermea, 30 F.3d 1539, 1563 (5th Cir. 1994), as well as the strength of the evidence against the defendant, efforts taken by the trial court to correct the effect of any impropriety by issuing curative instructions, and whether the conduct was in response to attack by defense counsel.  See Oles, 994 F.2d at 1524.

The district court did not abuse its discretion in refusing to grant a mistrial on the basis of the government's implication before the jury that the defendant had a duty to provide voice exemplar evidence.  The prejudice of this conduct, taken in context, is not immediately apparent, and the district court acted promptly and firmly to cure any prejudicial effect it might have had.  Likewise, the government's comment during closing that everyone has a right to plead not guilty is not on its face prejudicial.  Again, any prejudicial impact this comment may have carried was negated by the district court's curative instructions.  Given the weight of the evidence against Maass, the relative innocuousness of these incidents, and the district court's issuance of curative instructions, it is clear that the district court did not abuse its discretion in refusing to grant a mistrial.

As for the government's comment during closing rebuttal that defense counsel suffered "confusion about [the concept of] beyond a reasonable doubt,"

Mass asks us to subject this conduct to de novo review under United States v. Gabaldon, 91 F.3d 91, 94 (10th Cir. 1996). While it is true that counsel for Maass objected to the comment and did not request a mistrial, he objected on the ground that the comment was a personal attack, and not on the ground that the comment amounted to a negative remark about his unwillingness to testify, as he does now on appeal. Therefore, we review this claim for plain error under United States v. Russell, 109 F.3d 1503, 1514 (10th Cir. 1997).

This statement was nothing more than the argument of a lawyer, here a prosecutor responding to his opponent's claim that the government had failed to meet its evidentiary burden. As the district court told the jury in response to Maass' objection, "This is not about lawyers arguing about lawyers. This is about lawyers arguing about the evidence and to the extent that they are arguing about the evidence is totally appropriate." The district court was correct. This statement cannot fairly be interpreted as a comment on the defendant's refusal to testify. The statement by the prosecution that Maass' attorney misunderstands the concept of "beyond a reasonable doubt" did not prejudice Maass and therefore did not constitute plain error.

## C. The district court's failure to review Thomasson's personnel file <u>in camera</u>

Maass claims that the district court abused its discretion in refusing to order the government to turn over Thomasson's file for review by Maass or to examine the personnel file <u>in camera</u> for exculpatory evidence.

A trial court's decision not to conduct an <u>in-camera</u> inspection of materials is reviewed for abuse of discretion. <u>See</u> <u>United States v. Hanif</u>, 1 F.3d 998, 1002 (10th Cir. 1993). Here, the prosecutor explicitly represented to the court that the BATF had reviewed Thomasson's personnel file at its direction and had found no evidence that Agent Thomasson used illegal drugs or any other <u>Brady</u> material. Maass introduced no evidence that Agent Thomasson's file did contain evidence of drug use or other <u>Brady</u> material. Although Maass introduced some evidence dehors the personnel file of Agent Thomasson suggesting that Agent Thomasson may have used drugs during the undercover investigation of Maass, Maass introduced no evidence that such drug use would be revealed in Agent Thomasson's personnel file. The district court conducted a hearing on Maass' <u>Brady</u> request and listened to at least some of the tapes that Maass proffered to support his <u>Brady</u> claim. During the hearing the prosecution continued to assert that there was no <u>Brady</u> material in the requested file. The district court concluded that the tapes did not corroborate Maass' claims and that there was no evidence tending to establish that the prosecution had withheld <u>Brady</u> material.

- 14 -

On the basis of this record, we conclude that there was no abuse of discretion by the district court.

## II. Sentencing issues

### A. Enhancement of sentence for the killing of Sherrie Holmes

Maass claims that the court erred in enhancing his sentence by including the murder of Ms. Holmes as conduct related to the drug distribution crime for which he was convicted. We find that the district court did not abuse its discretion in doing so.

In reviewing the district court's application of the Sentencing Guidelines, we review the court's factual determinations for clear error and its legal conclusions de novo. See United States v. Cuthbertson, 138 F.3d 1325, 1326 (10th Cir. 1998). Moreover, "determination of whether prior conduct is relevant conduct is a pure question of fact for the district court to determine." Id. Sentencing for the trafficking of drugs, including conspiracy, attempt, and possession with intent to traffic drugs, is controlled by U.S.S.G. § 2D1.1. That section includes a cross-reference which applies "[i]f a victim was killed under circumstances that would constitute murder under 18 U.S.C. § 1111 had such killing taken place within the territorial or maritime jurisdiction of the United

States. . . ." U.S.S.G. § 2D1.1(d)(1).[7]   In such cases, the sentencing court is to "apply §2A1.1 (First Degree Murder)." Id.  In turn, U.S.S.G. § 2A1.1 simply states "Base offense level: 43."  Thus, if the district court finds by a preponderance of the evidence that a victim was murdered in relation to the federal crime or crimes for which the defendant was convicted, it must apply a base offense level of 43.[8]  See United States v. Crump, 120 F.3d 462, 467-68 (4th Cir. 1997).

In reaching its sentencing decision, the court may consider conduct of which the defendant has been acquitted, see United States v. Watts, 117 S. Ct. 633, 638 (1997) (per curiam), as well as conduct for which the defendant has not been charged, see United States v. Yarnell, 129 F.3d 1127, 1137 (10th Cir. 1997).

---

[7] 18 U.S.C.A. § 1111(a) (West Supp 1997) reads:

> Murder is the unlawful killing of a human being with malice aforethought.  Every murder perpetrated by poison, lying in wait, or any other kind of willful, deliberate, malicious, and premeditated killing; or committed in the perpetration of, or attempt to perpetrate, any arson, escape, murder, kidnaping, treason, espionage, sabotage, aggravated sexual abuse or sexual abuse, burglary, or robbery; or perpetrated from a premeditated design unlawfully and maliciously to effect the death of any human being other than him who is killed, is murder in the first degree.
>
> Any other murder is murder in the second degree.

[8] Under the Guidelines, sentencing at level 43, "absent any downward adjustments or departures, requires the district court to impose a life sentence." United States v. Crump, 120 F.3d 462, 467 n.3 (4th Cir. 1997).

So long as the district court finds by a preponderance of the evidence that the conduct in question occurred, and so long as the guidelines permit the conduct to be considered in calculating the sentence, the sentencing court may rely upon that conduct during sentencing. See Watts, 117 S. Ct. at 638; Witte v. United States, 515 U.S. 389, 397-98 (1995).

The key question we must ask is whether the district court clearly erred in finding that Maass' murder of Ms. Holmes was "relevant conduct" to his drug trafficking crimes. Under U.S.S.G. § 1B1.3(a)(1), relevant conduct, as well as the cross-referenced conduct in Chapter Two (including § 2D1.1) is determined on the basis of whether the "acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or wilfully caused by the defendant . . . occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense."[9] The district court did not err in finding that

---

[9] Maass suggests that the correct analysis of relevant conduct is found in U.S.S.G. § 1B1.3(a)(2), i.e., that the killing was relevant conduct only if it was part of the "same course of conduct or common scheme or plan" as Maass' methamphetamine distribution activities. However, § 1B1.3(a)(2) only applies to offenses that would require grouping under § 3D1.2(d). All offenses found in Chapter Two, Part A, of the Guidelines are specifically excluded from grouping under § 3D1.2(d), and because murder is found in § 2A1.1, the language of § 1B1.3(a)(2) cannot apply when determining whether a murder was relevant conduct to a drug distribution offense. For this reason, we analyze this question under the language of § 1B1.3(a)(1). See United States v. Cuthbertson, 138 F.3d

(continued...)

Maass murdered Ms. Holmes and that her killing was conduct relevant to his drug distribution activities.[10]

Maass argues that the district court erred in concluding that the murder occurred during the commission of his drug trafficking crimes because the murder did not occur concurrently with any identifiable drug distribution acts. However, the evidence before the district court showed that Maass murdered Ms. Holmes because he had learned that she may have gone to the police with information about his drug dealing activities. Before murdering her, Maass interrogated Ms. Holmes in an effort to find out just what the police knew about his drug-dealing activities.[11] Shortly after the murder, apparently confident that the police were

_____

[9](...continued)
1325, 1327 (10th Cir. 1998).

[10] Maass also asserts that the district court improperly found the killing of Ms. Holmes to be conduct relevant to his conspiracy conviction, because it failed to enhance his co-conspirators' sentences for that killing as well. However, at sentencing, the district court did not explicitly relate the killing to the conspiracy conviction but rather to Maass' own drug distribution activities. This is sufficient to support the enhancement of Maass' sentence.

[11] The relevant finding of the district court at Maass' sentencing was as follows:

> The Court has heard testimony of Mr. Maass' participation in the murder of a 23 year old woman, Sherry Holmes, in furtherance of his drug distribution activity. Miss Holmes' body was found on January 4, 1995, in southern Colorado. Evidence . . . presented today . . . [indicates] that Miss Holmes was murdered because she agreed to act as an informant for the police as to the drug trafficking activities of the Defendant Maass. Maass expressed his willingness

(continued...)

- 18 -

not aware of his dealings with Thomasson, Maass met with Thomasson to set up a methamphetamine deal. Thus, even if his killing of Ms. Holmes was not done during the actual commission of a drug distribution crime, it most certainly was done in preparation for such crimes as well as "in the course of attempting to avoid detection or responsibility for" his drug trafficking offenses. U.S.S.G. § 1B1.3(a)(1). The district court did not abuse its discretion in imposing an offense level of 43 as required by U.S.S.G. §§ 2D1.1(d)(1) and 2A1.1.[12]

---

[11](...continued)
to kill people in furtherance of his narcotics business. That was evidence in the trial. Maass told Thomasson that anyone in his organization better keep his mouth shut or they would die in a heart beat, and also made the threat to the civilians that was earlier alluded to.

In the summer of 1994 Maass told Thomasson he was concerned there was a snitch in his organization, and he wanted to take some people out. It appears that investigation by Douglas and Elbert County officers revealed that an associate of Maass discovered a note written by a law enforcement officer, indicating Sherry Holmes had agreed to become an informant. This fact was made known to Maass. Evidence indicated that he expressed concern as to whether or not Holmes had been responsible for his arrest. . . . [A]ccording to witnesses, Maass conducted a lengthy interrogation of Sherry Holmes attempting to determine what she had told the police. He took her to Elbert County, where she was shot five times in the head with a small caliber pistol, stabbed in the back, peanut butter spread on her face and finger tips, in an apparent attempt to have wild animals disfigure the body and disguise the identity.

[12] In a related matter, we hereby deny the government's Motion to Strike portions of Maass' Opening Brief.

- 19 -

In the alternative, Maass claims that the cross-reference provision of U.S.S.G. § 2D1.1(d)(1) violates his constitutional rights because it subjects him to double jeopardy, i.e., double punishment for the single act of murdering Ms. Holmes. A claim that a sentence subjects a criminal defendant to double jeopardy is reviewed de novo. See United States v. Hawley, 93 F.3d 682, 687 (10th Cir. 1996).

The Supreme Court has held that reliance upon prior criminal activity to enhance a defendant's sentence does not function to punish the prior criminal conduct, therefore such reliance on prior criminal activity in sentencing does not give rise to a double jeopardy claim. See Witte, 515 at 400; accord Hawley, 93 F.3d at 688. Thus, the cross-referencing provision of § 2D1.1(d)(1) does not violate the Double Jeopardy Clause of the Constitution.[13]

---

[13] Maass argues that the relevant conduct here resulted in a sentence enhancement substantially greater than the sentence range he would have otherwise been subject to, thus the sentence enhancement "tail" in effect was improperly allowed to "wag the dog" of the sentence for his convictions. See United States v. Lombard, 72 F.3d 170, 176-83 (1st Cir. 1995); see also Watts, 117 S. Ct. at 637 n.2 (listing cases); McMillan v. Pennsylvania, 477 U.S. 79, 88 (1986). We need not address this claim because it is clear that the sentence "dog" based on Maass' underlying convictions is much too large to be wagged by any enhancement "tail," even that of life imprisonment.

Maass' sentence on his weapons charges under 18 U.S.C. § 924(c) alone amounted to a 45-year sentence, to run consecutively to his other sentences. If, as Maass claims, he would have received 78 to 151 months' imprisonment for his drug crimes had the court not taken the murder of Ms. Holmes into account, this amounts to a minimum sentence of 51 years. Given that Maass was 35 years old at

(continued...)

## B.  Other sentencing issues

Maass claims that the district court erred in its calculation of the total amount of methamphetamine involved, and in enhancing his offense level for being a leader or organizer.  Because, as discussed above, we find that the district court properly imposed a life sentence in this case, we need not address these challenges to the court's sentencing decision.


## CONCLUSION

For the above reasons, Maass' conviction is AFFIRMED and his sentence is AFFIRMED.

---

[13](...continued)
the time of sentencing, a 51-year sentence is the functional equivalent of a life sentence.  See United States v. Bailey, 97 F.3d 982, 985 (7th Cir. 1996) (taking judicial notice that in 1992 a 65-year-old white male in the United States had a life expectancy of approximately 80.4 years) (citing Bureau of the Census, United States Dept. of Commerce, Statistical Abstract of the United States: 1995 86 (115th ed. 1995)).

Maass also claims that the district court's reliance upon his murder of Ms. Holmes to enhance his sentence violates an internal policy of the United States Justice Department known as the "Petite policy." According to Maass, under this policy the Justice Department restrains itself from prosecuting criminal acts that were the ingredients of prior state prosecution against the same individual. Maass asks us to construe this internal agency policy as prohibiting the district court from relying upon his state murder conviction in setting his sentence for his federal drug distribution crimes.  However, a sentencing enhancement is not a prosecution for the underlying conduct, and in his brief on appeal, Maass admits that "a sentencing enhancement does not technically fall within the confines of the Petite policy."  Therefore, Maass' Petite policy argument is without merit, and accordingly we decline to consider it further.

The mandate shall issue forthwith.

ENTERED FOR THE COURT

David M. Ebel
Circuit Judge