**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 26 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

AMOS MARTINEZ,

      Defendant-Appellant.

No. 00-2054
(D.C. No. CR-98-556-MV)
(Dist. N.M.)

**ORDER AND JUDGMENT**[*]

Before **BRORBY**, **EBEL** and **KELLY**, Circuit Judges.

Amos Martinez appeals his conviction for aggravated sexual assault. He challenges the admission of expert testimony on two grounds: First, he asserts the district court did not make an adequate finding of the reliability of the expert's methodology; and second, he argues the testimony was more prejudicial than probative. He also contends the prosecution's closing statements appealed to the sympathy of the jury. We find no plain error and therefore affirm.

---

[*]This Order and Judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

**BACKGROUND**

Amos Martinez was prosecuted for sexually assaulting C.[1] on an Indian reservation on May 4, 1998, in violation of 18 U.S.C. § 2241(c). At the time, C. was ten years old. She is the daughter of Martinez's ex-wife and calls Martinez (to whom she is not related) "grandpa."

A. Evidence of C.'s Sexual Abuse

There was physical evidence that at some point C. had been raped, since she was diagnosed with a sexually transmitted disease and had a torn hymen. No physical evidence, however, directly implicated Martinez. For example, in spite of C.'s report to several people that Martinez had ejaculated on her and that she had bled from the encounter, no semen or blood was found on the clothes C. wore that day. In addition, the trauma to her hymen likely occurred weeks or months before the alleged incident. C. exhibited antisocial behaviors consistent with sexual abuse, but at least some of these predated the alleged assault.

B. Evidence of Martinez's Guilt

In May 1998 C. told a nurse practitioner that Martinez "stuck [his penis] in her", but later stated in an interview with defense counsel and her family present

---

[1]The alleged victim's full name does appear in unsealed parts of the record. However, to the extent it may assist her in preserving her privacy, we refer to her by an initial. See United States v. Charley, 189 F.3d 1251, 1256 n.1 (10th Cir. 1999).

that Martinez had not done anything. At trial, she testified via closed-circuit television and was extremely reticent. Through leading questions, the prosecution elicited testimony that Martinez had touched her between her legs and on her chest, although C. said nothing about penile-vaginal contact. She stated that the incident made her feel "[a]wful." Her therapist at the time of the incident testified that on May 6, 1998, C. had reported that Martinez touched her bosom and pelvic area two days before.

Martinez, who speaks little English, was questioned by the FBI and consented to a polygraph examination. After being told that he had failed the polygraph, Martinez signed a written statement in which he confessed to penile-vaginal penetration, admitted he knew it was wrong and illegal to have sex with an eleven-year-old girl, and took responsibility for his actions. The confession further stated that Martinez had not received any threats or promises to induce the confession. He later recanted and asserted that he was coerced into confessing by the agents' aggressive questioning.

C. Tyler's Testimony

At trial, the prosecution presented testimony from Judith Tyler, who became C.'s mental health counselor shortly after the alleged sexual assault.[2] Tyler has a clinical master's degree, a doctorate in clinical psychology, and a license as a professional clinical counselor. She has attended a week-long seminar on sexual trauma. She was a counselor for Child Protective Services and has seen 50-100 cases of childhood trauma over the years.

The court accepted Tyler as a licensed professional clinical counselor with a specialty in the field of trauma. Martinez objected that "trauma" was too broad a field to describe her expertise. There was no specific testimony about the reliability of her methodologies, other than the general testimony as to her background.

Tyler testified as to C.'s emotional state, noting that she had become increasingly withdrawn and had threatened suicide at one point. Tyler indicated that C.'s symptoms – sleeping and eating problems – were consistent with trauma. When the prosecutor asked her what trauma she was referring to, Tyler answered, "I'm talking about her allegations of the – of sexual abuse." Tyler made no reference to Martinez in her direct testimony; she did note, however, "As is

_____

[2]Tyler also testified at a hearing on the government's motion to present C.'s testimony via closed-circuit television. At that hearing, the court recognized Tyler as an expert in the field of clinical psychology and granted the motion.

typical with a family in which there's been a disclosure like this, the family seemed to be taking sides, and I knew that C. was getting a lot of criticism and rejection by various family members as a result of having disclosed."

On cross-examination, Tyler conceded that C. had "very disturbing symptoms" dating back to before the alleged incident. These included incidents of C. stealing, lying, taking off her clothes, and "talk[ing] dirty" with other children. These pre-incident symptoms were consistent with trauma. Moreover, defense counsel noted that when Tyler was describing C.'s symptoms to the jury, she was reading them out of the DSM-IV definition of post-traumatic stress disorder (until counsel noticed and objected). Tyler also conceded that her clinical record did not note C.'s sleeping problem, which Tyler asserted she had learned about only in the previous few days, or her eating problem. Finally, Tyler admitted that some of the observed symptoms may have been related to the stress that C. was experiencing in anticipation of testifying, but was adamant that "that's not the majority" of her problem.

On redirect, Tyler noted that C. had expressed fear of Martinez, who was still coming to her house to visit her siblings (his children). Over defense counsel's objection, Tyler testified that C. had told her about a more recent incident with Martinez, in which C. had been washing dishes when Martinez approached her from behind and began fondling her. Tyler also discussed a

nightmare that C. had in which the police were being "mean" to Martinez. Tyler saw this as indicating "on the surface a concern and a caring about the alleged perpetrator." She referred in the abstract several times to a child victim's mixed feelings towards the "perpetrator" and concluded, "[T]o me the dream was a very clear expression of that dilemma that a child who may have been incested is feeling."

D. Trial

Martinez had been indicted on two counts of aggravated sexual assault, one for "contact between the penis of the defendant and the vulva of" C., and the other for "the intentional touching, not through the clothing, of the genitalia of [C.], with an intent to abuse, humiliate, harass, degrade and arouse and gratify the sexual desire of the defendant." The jury acquitted him of penile-vaginal contact, but found him guilty of touching C.'s genitalia. Martinez was sentenced to 135 months' imprisonment.

On appeal, Martinez challenges only the district court's decision to admit Tyler's expert testimony. He raises two objections: first, that Tyler was not qualified to give the testimony, and second, that the probative value of the testimony was substantially outweighed by its danger of unfair prejudice. He also asserts that the prejudice was compounded by the prosecutor's closing statements, which he alleges appealed to the jury's sympathy.

## DISCUSSION

### I. Jurisdiction and Standard of Review

The district court had jurisdiction over this criminal prosecution under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291. We granted Martinez's motion to waive oral argument in a prior order.

Martinez concedes that he did not raise the objections asserted on appeal in the trial court. We therefore review for plain error. See Fed. R. Crim. P. 52(b). To reverse, we must find (1) error that is (2) plain and (3) affects substantial rights. See Johnson v. United States, 520 U.S. 461, 467, 117 S. Ct. 1544, 137 L. Ed. 2d 718 (1997). For the third prong, "[i]t is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice." United States v. Olano, 507 U.S. 725, 734, 113 S. Ct. 1770, 123 L. Ed. 2d 508 (1993). If all three preconditions are met, we may consider whether to exercise our discretion to reverse, but only if the error "seriously affects the fairness, integrity, or public reputation of judicial proceedings." Johnson, 520 U.S. at 467.

### II. Tyler's Qualification To Testify

Federal Rule of Evidence 702 requires the trial court to ensure that expert testimony is reliable. See United States v. Velarde, 214 F.3d 1204, 1208 (10th Cir. 2000). The court has broad discretion both in deciding how to assess reliability and in making the ultimate determination. See id. at 1208-09.

In this case, the trial court made no explicit finding on reliability, but Martinez did not call Tyler's methodology or principles into question. Although the district court should nevertheless have made reliability findings, under these circumstances we will look to the record to discern support for the district court's decision to allow the testimony. Here, it is evident the trial court had a sufficient basis to admit the vast majority of Tyler's testimony. First, as C.'s clinical therapist, Tyler was able to testify as to her personal observations of C. "A treating physician is not considered an expert witness if he or she testifies about observations based on personal knowledge, including the treatment of the party." Davoll v. Webb, 194 F.3d 1116, 1138 (10th Cir. 1999). Second, the court had considerable evidence of Tyler's training and professional experience. Martinez's counsel conducted voir dire on these qualifications. When Tyler did offer testimony that went beyond her treatment, this background generally sufficed to substantiate her opinions. For example, Tyler compared C.'s behavior to those of other children who have experienced trauma.

Martinez objects specifically to two aspects of Tyler's testimony. First, as noted above, she discussed typical behaviors of traumatized children. Second, she identified Martinez's alleged assault of C. as the cause of the trauma in this case. We hold that the district court did not commit plain error in admitting these statements.

Even if we were to assume these statements should have been excluded, Martinez has not demonstrated that they affected his substantial rights. "The substantiality requirement of the plain error rule embodies a requirement that the defendant prove prejudice attributable to the error." United States v. Williamson, 53 F.3d 1500, 1521 (10th Cir. 1995). To satisfy this prong, Martinez must show a reasonable probability that (1) if the district court had inquired into reliability, it would not have accepted Tyler as an expert witness, and (2) if her testimony had been limited thus, Martinez would have been acquitted on the second count. Cf. United States v. Hanif, 1 F.3d 998, 1002 (10th Cir. 1993) (noting that the defendant "must allege prejudice – i.e., that the district court admitted inadmissible evidence – to allege" a violation of Fed. R. Evid. 103(c)).

We find nothing in the record to support Martinez's allegation that Tyler's testimony would have been excluded had the court made an explicit reliability determination. Martinez had an opportunity to ask about the foundations of Tyler's testimony on cross-examination and recross, but declined to do so. Indeed, when she started to testify on redirect that the third phase of trauma reaction has "been written extensively about by experts in the field of child trauma," defense counsel successfully objected that this was hearsay. It thus appears that Martinez himself prevented Tyler from establishing the reliability of her expert opinions.

On this record, Martinez has not met his burden to show that Tyler's testimony would have been limited.

Moreover, even if it had been limited, we do not find a reasonable possibility the outcome would have differed. Many of the statements Martinez objects to, such as those characterizing the typical behaviors of traumatized children, were too general and abstract to prejudice Martinez in this case. The other statements, such as Tyler's reference to "her allegations of the – of sexual abuse," constituted only a small part of the testimony, and Tyler qualified this reference to sexual abuse as an "allegation" rather than as a "fact." Nearly all of Tyler's testimony was unobjectionable, and on appeal Martinez has not objected to the testimony of any other witnesses. Cf. United States v. Charley, 189 F.3d 1251, 1271 (10th Cir. 1999) ("[O]nly a small, albeit important, portion of the testimony admitted at trial was erroneously admitted."). On this record, we cannot say Martinez has shown that his substantial rights were affected by the admission of Tyler's testimony.

III. Rule 403

Martinez also objects to Tyler's testimony under Federal Rule of Evidence 403, which states that relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice." "Rule 403 is an extraordinary remedy and should be used sparingly." United States v. Rodriguez,

192 F.3d 946, 949 (10th Cir. 1999). Tyler's testimony helped the jury understand C.'s behavior both before and after the alleged assault. Even if it could have been somewhat prejudicial to Martinez, it was within the district court's discretion to find its danger of unfair prejudice did not substantially outweigh its probative value. Under the circumstances, it was not plain error for the court to admit Tyler's testimony.

IV. Closing Statements

Martinez objects to several statements in the prosecution's closing arguments that highlighted C.'s trauma. In particular, the prosecution closed with these words:

> And certainly this kid was trashed as any victim of sexual assault is always trashed. And yes, she had behavioral problems, but I ask you, who is the thief in this case? Who stole [C.]'s childhood? Who violated this child and told you how awful she feels, and she can't even tell you exactly what he did to her.
> I ask you, ladies and gentlemen, to convict that man of both counts of aggravated sexual abuse of [C.]

Martinez argues that these and other similar statements were inflammatory and appealed to the jury's sympathy.

"We do not condone comments encouraging the jury to allow sympathy, sentiment, or prejudice to influence its decision." Duvall v. Reynolds, 139 F.3d 768, 795 (10th Cir. 1998). Nonetheless, if "it [is] probable that the nature of the crime produced sympathy for the victim long before the prosecutor gave his

closing remarks," the remarks may not be prejudicial. Id. The trauma to C. was hideous no matter who was responsible, and it was likely to produce sympathy. The prosecution's remarks did not add to the jury's sympathy in any significant way. The defense counsel cautioned the jury not to be swayed by sympathy, and the prosecution disclaimed any intention to inject sympathy into the deliberations. The jury instructions stated that the verdict had to be based "solely upon the evidence, without prejudice or sympathy."

Neither of the cases that Martinez relies upon is relevant. In United States v. Lowder, 5 F.3d 467, 473-74 (10th Cir. 1993), we noted that it was improper for the prosecution to state that the victims had nobody to speak for them, but we found the judge's curative instruction (given after a contemporaneous objection) to be sufficient. Thus, we found no reversible error. In United States v. Payne, 2 F.3d 706, 712 (6th Cir. 1993), the court found misconduct when the prosecution repeatedly referred to facts not in evidence during the trial. The court noted that these remarks went "beyond anything in the evidence or anything invited by the defense." Id. at 715. Here, by contrast, there was no reference made to facts not in evidence.

Under the circumstances, we find no plain error in the prosecution's closing statements.

## CONCLUSION

We find no plain error and therefore AFFIRM.


ENTERED FOR THE COURT


David M. Ebel
Circuit Judge