FILED
United States Court of Appeals
Tenth Circuit

June 30, 2025

Christopher M. Wolpert
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

　　Plaintiff - Appellee,

v.

GEOVANTA TY'KEARON LEE, a/k/a
Devion Richard Knight,

　　Defendant - Appellant.

No. 24-7015
(D.C. No. 6:22-CR-00111-RAW-1)
(E.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **PHILLIPS**, and **MORITZ**, Circuit Judges.
_____

　　Geovanta Lee fired a gun at his ex-girlfriend's car. After she reported the shooting to the police, Lee called her repeatedly and threatened to post intimate videos of their sexual relationship online. A subsequent investigation revealed that Lee had a phone containing explicit videos of his ex-girlfriend, who was underage. A jury convicted Lee of assault, use of a firearm during a crime of violence, cyberstalking, and receipt and possession of material involving the sexual exploitation of a minor. On appeal, Lee urges us to reverse for improper venue and

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. But it may be cited for its persuasive value. _See_ Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

insufficient evidence. He also challenges his sentence. Discerning no error, we affirm.

## Background

A relationship between two Ardmore, Oklahoma teenagers led to the events at issue in this appeal. In the summer of 2020, Lee, then 19, began dating J.D., who was 16 at the time. During their on-again, off-again relationship, they often recorded videos of themselves performing sexual acts. After dating for about a year, they broke up but maintained irregular contact. Eventually, J.D. asked Lee to leave her alone and blocked him on social media. Lee nevertheless continued to contact her.

One day in February 2022, J.D. was driving around town with a friend when she spotted Lee riding in the passenger seat of a red Nissan traveling in the opposite direction. The Nissan turned around and followed J.D.'s car for several blocks. When J.D. stopped the car, the Nissan pulled up beside her. Lee got out and began hitting the back window of her car with a gun. When J.D. started to drive off, Lee fired at her car. The bullet penetrated the trunk, hitting an amplifier. J.D. called the police, who referred the case to the FBI.[1] J.D. later testified that Lee had not scared her when he fired at her car.

While the FBI's investigation was underway, Lee repeatedly tried contacting J.D. on social media and by phone. Sometimes Lee would call in the middle of the

---

[1] The Ardmore Police Department referred the case to the FBI because Ardmore lies within the boundaries of the Chickasaw Nation of Oklahoma, and Lee is an enrolled member of that tribe.

night and block his caller ID. At one point, Lee messaged J.D. and said, "Ima finna to post all our shit on Facebook,"[2] which J.D. took as a threat to post the sexually explicit videos they had recorded. R. vol. 3, 106. Lee threatened to send the videos to J.D.'s mother as well. J.D. did not want the videos shared, but Lee made these threats at least five times. Yet the communication between Lee and J.D. was not always one way; J.D. also reached out to Lee at times. For instance, she accused him of shooting at her car and asked him to repay money that he owed her. The two also met up and had sex on multiple occasions after the shooting.

Once J.D. and her mother told investigators about the videos, police obtained a search warrant for the house in Ardmore that Lee shared with his mother. In one of the bedrooms, they found mail addressed to Lee, medicine prescribed to him, identifying documents, and three cellphones. On one of the phones, an FBI agent found text messages between J.D. and Lee, including an exchange from October 2021, when J.D. was still a minor.[3] That exchange included a video of her having oral sex with an unidentified man. In response, Lee wrote, "LMAO WYD,"[4] and then

---

[2] "Finna" is "used for 'fixing to' in informal speech." *Finna*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/finna [https://perma.cc/PMS4-BTTJ] (last visited June 25, 2025).

[3] It appears that J.D. was the primary user of the phone, which was used to send the video to a number associated with Lee. And Lee periodically used the phone to access email.

[4] "LMAO" is an abbreviation for "laughing my ass off." *LMAO*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/LMAO [https://perma.cc/D9KR-TBXY] (last visited June 25, 2025). And "WYD" is an abbreviation for "[w]hat are you doing?" *Wyd*, Dictionary.com, https://www.dictionary.com/e/acronyms/wyd/ [https://perma.cc/FMH2-LZEV] (cleaned up) (last visited June 25, 2025).

said, "I'm finna to post it." *Id.* at 305–06.

A grand jury indicted Lee on five charges: assault with a dangerous weapon with intent to do bodily harm in Indian Country; violating 18 U.S.C. § 924(c) by using, carrying, brandishing, or discharging a firearm during a crime of violence; cyberstalking; receiving material involving the sexual exploitation of a minor; and possessing material involving the sexual exploitation of a minor in Indian Country.

At trial, after the government presented the evidence detailed above, Lee declined to put on any evidence and moved for acquittal under Federal Rule of Criminal Procedure 29. The court denied his motion, and the jury convicted Lee on all counts.

A probation officer then prepared a presentence investigation report (PSR). The PSR proposed a five-level enhancement for engaging in a pattern of activity involving the sexual abuse or exploitation of a minor, citing numerous recorded video jail calls in which Lee asked his minor girlfriend, M.W., to display her nude body. Based in part on that enhancement, the PSR calculated Lee's sentencing range under the United States Sentencing Guidelines (U.S.S.G. or the Guidelines) at 135 to 168 months. But because his § 924(c) conviction carried a mandatory minimum of 120 months that must be served consecutively, his sentencing range was 255 to 288 months.

At sentencing, the district court overruled Lee's objection to the enhancement, adopted the PSR, and rejected Lee's requested sentence of 166 to 177 months. And although the government requested an upward variance based on Lee's continued

4

criminal behavior behind bars—enticing M.W., smoking marijuana, and possessing a weapon—the district court chose to impose a sentence at the bottom of the Guidelines range: 255 months in prison, plus five years of supervised release.[5]

Lee appeals.

## Analysis

Lee challenges several of his convictions on grounds of venue and the sufficiency of evidence. He also challenges his sentence, arguing that the pattern enhancement should not apply and that his sentence is substantively unreasonable. We address each issue in turn.

## I.    Venue

Lee first argues that we must reverse his conviction for receiving material involving sexual exploitation of a minor because venue was not proper in the Eastern District of Oklahoma. The Constitution guarantees a criminal defendant the right to a trial in the state and district in which he or she committed the alleged crime. U.S. Const. art. III, § 2, cl. 3 ("Trial shall be held in the [s]tate where the said [c]rimes shall have been committed."); *id.* amend. VI (establishing right to trial "by an impartial jury of the [s]tate and district wherein the crime shall have been committed"); *cf. also* Fed. R. Crim. P. 18 ("Unless a statute or these rules permit

---

[5] Aside from the consecutive 120 months on the § 924(c) count, the district court ran Lee's other sentences concurrently: 135 months for receiving material involving sexual exploitation of a minor, 120 months for possessing material involving sexual exploitation of a minor, 120 months for assault, and 60 months for cyberstalking.

otherwise, the government must prosecute an offense in a district where the offense was committed."). When reviewing venue challenges, we "view[] the evidence in the light most favorable to the [g]overnment" and ask whether "the [g]overnment proved by [a] preponderance of direct or circumstantial evidence that the crimes charged occurred within the district." *United States v. Kelly*, 535 F.3d 1229, 1232–33 (10th Cir. 2008) (quoting *United States v. Rinke*, 778 F.2d 581, 584 (10th Cir. 1985)).

Here, the government charged Lee with knowingly receiving material involving the sexual exploitation of a minor "using any means and facility of interstate and foreign commerce." 18 U.S.C. § 2252. Crimes under § 2252 are considered continuing offenses that can occur in multiple districts. *See United States v. Cameron*, 699 F.3d 621, 636 (1st Cir. 2012) (recognizing receipt and possession of child pornography in violation of § 2252 as continuing offense); *United States v. Moncini*, 882 F.2d 401, 403–04 (9th Cir. 1989) (same); *cf. United States v. Thomas*, 74 F.3d 701, 709 (6th Cir. 1996) ("[F]ederal obscenity laws, by virtue of their inherent nexus to interstate and foreign commerce, generally involve acts in more than one jurisdiction or state."). And Congress allows continuing offenses to be "prosecuted in any district from, through, or into which such . . . imported object or person moves." 18 U.S.C. § 3237(a). Thus, because receipt of explicit material touches both the district *from* which it is sent and the district *to* which it is sent, the government could prosecute a defendant in either district.

Lee contends venue was improper here because the government failed to proffer any evidence that he was in the Eastern District of Oklahoma—where he had

6

lived his entire life—when he received the explicit material. To be sure, Lee's primary phone was never recovered, and phone records did not reveal his phone's location at the time of receipt. However, J.D. testified that she recorded videos with Lee in the Eastern District. And law enforcement found a phone in Lee's room in Ardmore that contained a video of J.D. performing oral sex. Therefore, at the very least, the video moved "into" the venue, which is sufficient for a continuing offense like this one. § 3237(a).

Although we have not fielded a venue challenge under § 2252 like the one at issue here, our approach is consistent with that of the First Circuit, which addressed a similar situation in *Cameron*. There, the defendant argued venue was improper in Maine for his § 2252 charge because he was in New York when he received child pornography. 699 F.3d at 636. However, the court explained that § 2252 is a continuing offense that could be prosecuted in Maine because the defendant later brought his laptop there. *Id.* We thus hold that the government established by a preponderance of evidence that venue was proper in the Eastern District of Oklahoma.

## II.     Sufficiency

Lee next challenges the sufficiency of the evidence supporting three of his convictions: possessing material involving sexual exploitation of a minor, assault with intent to do bodily harm, and cyberstalking. In a sufficiency challenge, we "view[] the evidence in the light most favorable to the government" and ask whether "any rational tier of fact could have found the defendant guilty of the crime beyond a

reasonable doubt." *United States v. Vallo*, 238 F.3d 1242, 1247 (10th Cir. 2000) (quoting *United States v. Wood*, 207 F.3d 1222, 1228 (10th Cir. 2000)).

## A.    Possessing Material Involving Sexual Exploitation of a Minor

Lee argues no reasonable jury could convict him of possessing material involving sexual exploitation of a minor. For this offense, the government had to prove that Lee knowingly possessed a visual depiction of a minor engaging in sexually explicit conduct. § 2252(a)(4)(A).

Lee challenges the "knowingly" element. For possession to be "knowing," a defendant "must know the charged images exist." *United States v. Haymond*, 672 F.3d 948, 955 (10th Cir. 2012). And possession can be actual or constructive, meaning a defendant "knowingly hold[s] the power and ability to exercise dominion and control over" property. *United States v. Culpepper*, 834 F.2d 879, 881 (10th Cir. 1987). The government can prove constructive possession circumstantially, such as through incriminating statements about the contraband. *Id.* at 882.

Recall that the government's evidence of Lee's possession of explicit material came from a phone found in Lee's bedroom at his mother's house. Lee argues that finding the phone there does not prove knowing possession because nothing indicates that he turned it on or knew that it contained prohibited material. Yet a witness testified that Lee used the phone to check his email, a function that would require the phone to be turned on. The witness also testified that the phone contained a conversation in which a number associated with Lee responded to an explicit video. And in a recorded jail call, Lee acknowledged the phone was found in his room.

8

Further, the government presented evidence that Lee messaged J.D. and threatened to post their videos (something he could only do if he possessed them), made statements to a detective about J.D. being a minor at the time of recording, and mentioned the videos in jail phone calls. A rational trier of fact could have concluded from this evidence that Lee knew he possessed material involving sexual exploitation of a minor.

**B.     Assault with a Dangerous Weapon with Intent to do Bodily Harm**

Next, Lee contends the government failed to prove the requisite specific intent for his assault conviction. *See* 18 U.S.C. § 113(a)(3) (criminalizing "[a]ssault with a dangerous weapon, *with intent to do bodily harm*" (emphasis added)); *United States v. Harris*, 10 F.4th 1005, 1015 (10th Cir. 2021) (stating that § 113(a)(3) "requires specific intent"). The statute does not define "intent to do bodily harm," and our caselaw does not provide much guidance beyond the generalities that criminal intent is a factual question "peculiarly within the province of the jury" and typically proven by circumstantial evidence. *United States v. Greene*, 442 F.2d 1285, 1287–88 (10th Cir. 1971) (quoting *United States v. Ebey*, 424 F.2d 376, 378 (10th Cir. 1970)); *see also United States v. Lovern*, 590 F.3d 1095, 1105 (10th Cir. 2009). But both Lee and the government suggest relying on the objective approach taken by the Fifth Circuit. That court does not consider intent subjectively—by "the secret motive of the actor or some undisclosed purpose merely to frighten"—but "objectively from the visible conduct of the actor and what one in the position of the victim might reasonably conclude." *Shaffer v. United States*, 308 F.2d 654, 655 (5th Cir. 1962).

Invoking this standard, Lee relies on J.D.'s testimony that he shot at the car, not at her, and that she was not afraid of him. And Lee emphasizes that the bullet went into the trunk, which he suggests shows that he did not aim at someone in the car. Thus, according to Lee, the record establishes that he objectively lacked the specific intent to do bodily harm. But our review of the record reveals otherwise. Viewed objectively, the record shows that an armed Lee approached the car, hit it with his gun, and then opened fire on the back of the car knowing the car was occupied by two people. Under these circumstances, someone in J.D.'s position would "reasonably conclude" that Lee intended to do bodily harm. *Id.*

Moreover, even if we were to go beyond *Shaffer*'s purely objective approach, evidence of Lee's subjective intent only confirms this conclusion. J.D.'s friend testified that Lee seemed angry when he approached the car. Although J.D. testified that she was not afraid of Lee, she also said that when he got out of the car, she "already knew there was nothing good about that" and decided to drive off. R. vol. 3, 115. And witnesses who responded to the scene described her as "scared, crying, shaking," "very upset," and "traumatized"—impressions that were confirmed by body-camera footage introduced at trial. *Id.* at 141, 327, 366. In sum, intent is a question uniquely suited for a jury, and a rational juror viewing this evidence in a light most favorable to the government could find Lee had the requisite intent to do bodily harm.

### C.   Cyberstalking

Lee also argues there was insufficient evidence supporting his cyberstalking

10

conviction. The statute prohibits "engag[ing] in a course of conduct that . . . causes, attempts, or would be reasonably expected to cause substantial emotional distress" while having "the intent to kill, injure, harass, or intimidate." 18 U.S.C. § 2661A(2). On appeal, Lee claims his many calls and vague threats to post explicit videos of J.D. online did not form such a course of conduct. In support, he highlights that J.D. willingly called him, saw him, and had sex with him multiple times after the shooting, which supports the conclusion that no stalking occurred.

Not so. That J.D. at times reached out to and interacted with Lee (including, in one instance, to accuse him of the shooting) does not negate his course of conduct, which a rational jury could conclude amounted to cyberstalking. Lee repeatedly called J.D., including in the middle of the night while blocking his caller ID, and sent messages threatening to disseminate the videos. J.D. testified that he probably made this threat more than five times. Such threats would be reasonably expected to cause distress; indeed, J.D. testified that she did not want the intimate videos shared. Thus, sufficient evidence supports Lee's cyberstalking conviction.

## III.    Sentence

Lee challenges his sentence on two fronts. First, he argues that the district court erred by assessing a five-level enhancement for a pattern of enticing and persuading minors to create exploitative materials. Second, he argues that his sentence is substantively unreasonable.

### A.    Enhancement

"When evaluating sentence enhancements under the . . . Guidelines, this court

11

reviews the district court's factual findings for clear error and questions of law de novo." *United States v. McDonald*, 43 F.4th 1090, 1095 (10th Cir. 2022). Lee argues the district court erred in applying a five-level enhancement for receiving material involving the sexual exploitation of a minor based on a finding that Lee "engaged in a pattern of activity involving the sexual abuse or exploitation of a minor." U.S.S.G. § 2G2.2(b)(5). The commentary to § 2G2.2 defines "sexual exploitation" by incorporating conduct described in a series of other statutes, and it defines a pattern of activity as "any combination of two or more separate instances of the sexual abuse or sexual exploitation of a minor by the defendant, whether or not the abuse or exploitation (A) occurred during the course of the offense; (B) involved the same minor; or (C) resulted in a conviction." § 2G2.2 cmt. 1. At the same time, the commentary also clarifies that "[s]exual abuse or exploitation does not include possession, accessing with intent to view, receipt, or trafficking in material relating to the sexual abuse or exploitation of a minor." *Id.* (cleaned up).

Here, the district court found a pattern based on several recorded jail calls during which Lee asked his minor girlfriend, M.W., to expose her nude body. Lee takes issue with this finding, arguing the district court erred because he did not actually engage in sexual abuse or exploitation of M.W.; instead, he only received or possessed the material relating to the sexual abuse or exploitation of M.W.

But Lee overlooks that the commentary's definition of sexual exploitation expressly includes the conduct described in 18 U.S.C. § 2251(a), which prohibits "entic[ing]" a minor "to engage in[] any sexually explicit conduct for the purpose of

producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct." And sexually explicit conduct includes "lascivious exhibition of the . . . genitals." 18 U.S.C. § 2256(2)(A)(v). Lee's conduct fits squarely within this definition. While incarcerated for receiving sexual videos of a minor, Lee enticed his minor girlfriend to show her nude body on multiple occasions on live video calls that were also recorded. Therefore, he "engaged in a pattern of activity involving the sexual abuse or exploitation of a minor," and the five-level enhancement was appropriate. § 2G2.2(b)(5).

**B.    Substantive Reasonableness**

We review the substantive reasonableness of Lee's sentence for abuse of discretion, meaning that a sentence is substantively unreasonable if it "exceed[s] the bounds of permissible choice, given the facts and the applicable law." *United States v. Chavez*, 723 F.3d 1226, 1233 (10th Cir. 2013) (quoting *United States v. McComb*, 519 F.3d 1049, 1053 (10th Cir. 2007)). We examine "whether the length of the sentence is reasonable given all the circumstances of the case in light of the factors set forth in 18 U.S.C. § 3553(a)." *Id.* (quoting *United States v. Reyes-Alfonso*, 653 F.3d 1137, 1145 (10th Cir. 2011)). And because Lee's 255-month sentence is within his Guidelines range, we presume it is reasonable; Lee bears the burden of rebutting that presumption. *Id.*; *see also United States v. Richards*, 958 F.3d 961, 969 (10th Cir. 2020).

Lee cannot do so. His only argument is that his 135-month sentence for receiving material involving sexual exploitation of a minor is substantively

13

unreasonable because his sexual relationship with J.D. did not violate the law—only receipt of the recording did. Citing no authority, he contends this is not the kind of scenario Congress intended to punish.

But Lee's argument overlooks that the severity of his sentence on this count stems, in part, from the enhancement outlined above: based on Lee's calls with M.W., the Guidelines suggested a range of 135 to 168 months. The district court did not abuse its discretion when it imposed a sentence on the low end of that range.[6] And because Lee offers no other reason to question the reasonableness of his 255-month sentence overall (which resulted from the combination of his Guidelines range and the consecutive 120 months for his § 924(c) offense), we reject his substantive-unreasonableness argument.

**Conclusion**

In sum, we affirm Lee's convictions, holding that venue was proper and the evidence was sufficient. We also affirm his sentence, finding no error in the § 2G2.2(b)(5) enhancement and no abuse of discretion in the overall length of his

---

[6] Lee also purports to take issue with the district court imposing the statutory maximum sentences for cyberstalking, assault, and possession. But those charges didn't determine the length of his sentence. Instead, as Lee acknowledges, the *receipt* charge was the "primary engine that drove the sentence in this case." Aplt. Br. 28. And because we find Lee's 135-month sentence for receipt is substantively reasonable, we need not address his alternative arguments about the other charges.

14

sentence.

Entered for the Court

Nancy L. Moritz
Circuit Judge